[Crim. No. 18011. Second Dist., Div. Five. Mar. 3, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIAM STANLEY GREEN, Defendant and Respondent.

## COUNSEL

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, James L. McCormick, Benjamin Avan, and Harry W. Brainard, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**AISO, J.**—Defendant William Stanley Green was charged by information with illegal possession of a sawed-off shotgun. (Pen. Code, § 12020.) The trial court granted defendant's motion to suppress the shotgun and ammunition upon the grounds they were the fruits of an illegal search and seizure (Pen. Code, § 1538.5) and dismissed the action (Pen. Code, § 1385). The People appeal from the pretrial order of dismissal (Pen. Code, § 1238, subd. (7)), seeking a review of the trial court's ruling on the section 1538.5 motion.

We are not here concerned with a situation where a trial court has resolved the section 1538.5 motion on the basis of conflicting evidence. (*People* v. *West* (1970) 3 Cal.3d 595, 600, 602 [91 Cal.Rptr. 385, 477 P.2d 409], and *People* v. *Harrington* (1970) 2 Cal.3d 991, 997 [88 Cal. Rptr. 161, 471 P.2d 961].) We have here a question of law since the record reflects that the trial court treated the motion as presenting an issue of law. In essence, the People contended at the motion that where a peace officer has reasonable and probable cause to believe that there is a shotgun concealed under the hood of a car parked upon a parking lot within the city limits, Penal Code section 12031,[1] subdivision (c), justifies opening up the hood to ascertain the presence of the shotgun and upon finding such a

---

[1]Penal Code section 12031 provides in part: "(a) Except as provided in subdivision (b) [not applicable to this case], every person who carries a loaded firearm on his person or in a vehicle while in any public place or on any public street in an incorpo-

weapon to examine it to see whether it is loaded. Defense counsel contended that such an examination could be justified only as an incident to an arrest, and since a violation of section 12031 would be a misdemeanor only, the officers lacking probable cause to arrest for the misdemeanor (Pen. Code, § 836, subd. 1) could not make the search without violating the Fourth Amendment. The court stated: "I want to get it clear in my mind whether 12031 gives you a right to inspect the gun after it was legally found or whether 12031 gives a right to look for a gun on information and inspect it." It thereafter granted the motions to suppress "on the law" and to dismiss "as a matter of law."[2]

## I.

The evidence at the hearing consisted of the transcript of the preliminary hearing[3] at which two citizen witnesses and one arresting officer testified, supplemented by the testimony of the other arresting officer. Since the trial court's determination was made without ruling on credibility of witnesses or resolving conflicts in the testimony, we view the evidence in the light most favorable to the appellant assuming that version to be true. (Cf. *People* v. *Wilson* (1967) 66 Cal.2d 749, 762 [59 Cal.Rptr. 156, 427 P.2d 820]; *Ratner* v. *Municipal Court* (1967) 256 Cal.App.2d 925, 929 [64 Cal.Rptr. 500].)

The arresting officers, Raul F. Vega and Stephen Kotsay of the Los Angeles Police Department, went to the Loran Hospital, 2972 West Seventh Street, Los Angeles, in response to a radio call. Upon their arrival, they were met by Bruce Burrows Pierce who had called the police. He directed them to a parking lot in back of the building at that location. He also informed them that Mrs. Linn[4] had found a shotgun in a golf bag in the back seat of her car and that defendant had relieved her of the bag. He also told them that he observed defendant walk towards defendant's 1962 white "Chevy" carrying the golf bag with the shotgun sticking out of it and then lift the hood of his car. Officer Vega confirmed from Mrs. Linn the portion of the information which Pierce attributed to her.

---

rated city or in any public place or on any public street in a prohibited area of unincorporated territory is guilty of a misdemeanor. . . . (c) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on his person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to the provisions of this section constitutes probable cause for arrest for violation of this section."

[2]Minute order of January 12, 1970, as amended by *nunc pro tunc* minute order of May 25, 1970.

[3]Defendant waived his right to have the witnesses who testified at the preliminary hearing testify again at the section 1538.5 hearing.

[4]Identified below.

Mrs. Linn testified at the preliminary hearing. Her full name was Margaret Ann Linn; she was a medical secretary employed at the Loran Hospital. She knew defendant as an outpatient of the hospital who came in occasionally. She was familiar with his car. On September 6, 1969, about 5 p.m., she went to her car, which was parked in the hospital parking lot, to get her purse. When she opened her car door, she was surprised to see a golf bag which she had never seen before "on the floor of the back seat." She pulled the bag out to see if she could determine why it was there. She removed a tissue-like paper "on top of the bag" and saw what looked like "a base or a stock of a shotgun." She called out to her husband, who was then talking to defendant, "asking" what the object was and why it was in her car. Defendant thereupon came over and said, "something, 'I will take it, Margaret,' or, 'I will take care of it.' " He took the bag from her and walked towards his car. She also remarked to Pierce, who was also standing there, "Do you know what was in there? It was a shotgun." At the time of Mrs. Linn's discovery of the golf bag, defendant's car was parked "almost directly in back" of hers, but he later moved it towards the side of the parking lot.

According to Officer Kotsay, Mrs. Linn also informed the officers that defendant was an outpatient who on "the previous day . . . was drinking on the premises, . . . caused a disturbance at the hospital, and [had been] asked to leave."[5] Mrs. Linn further stated to him that defendant had gone to the front of his vehicle with the golf bag, which "appeared to be shorter than a normal type of golf bag," and that she had observed "the barrel of the shotgun protruding from the end of the bag." Pierce had also testified at the preliminary hearing that the golf bag "appeared to be shorter than the normal golf bag, probably an old-fashioned one," brownish in color, and that he later saw holes in the bottom of it.

Officer Vega went inside of the building asking for a "Mr. Green," since he had been informed that "Green" was the man with the gun. Defendant identified himself as Green. At this juncture "a [female Caucasian] citizen who [lived] in the rear of the building . . . walked up to [Officer Vega] and said that she [had] observed [defendant] take a golf bag with a butt of a gun sticking out of it from Mrs. Linn's car and [he] placed it in the engine compartment of his vehicle," adding that the white vehicle was defendant's. Green confirmed that the vehicle was his. Officer Vega opened up the hood and observed the butt of a shotgun sticking out of "a golf bag, burlap bag." He removed the bag from the engine compartment, extracted the gun from

---

[5]Officer Vega had testified that "the witnesses had told [him] that [defendant] had been causing a disturbance" prior to Vega's opening the hood.

the bag, and opened the gun. He found a total of six rounds of ammunition in it, with one in the chamber so that the gun could be immediately fired. His partner, Officer Kotsay, "also observed a white string that was tied around the trigger assembly of the shotgun." Officer Vega measured the length of the shotgun and found its barrel to be approximately 16 inches in length. He immediately arrested defendant for possession of a sawed-off shotgun.

Prior to opening the hood, Officer Vega had asked defendant "if he had a gun?" Defendant had answered, "No." The officer did not have a warrant to search the car. He did not ask defendant for permission to open the hood. He did not have any knowledge as to the length of the barrel before looking into the engine compartment. His partner, Officer Kotsay, thought that possibly there was a "sawed-off type of shotgun" based upon the information that the golf bag was shorter than normal and that the barrel was protruding from the end of it. Officer Kotsay was also aware of Penal Code section 12031 at the time. He was not sure whether it was he or Officer Vega who actually lifted up the hood of the engine compartment.

## II.

The parking lot, being accessible to members of the public having business with the hospital, was a public place. (*In re Zorn* (1963) 59 Cal.2d 650, 652 [30 Cal.Rptr. 811, 381 P.2d 635]; *In re Steinke* (1969) 2 Cal. App.3d 569, 575 [82 Cal.Rptr. 789].) Likewise that part of the vehicle which was observable from the outside was a public place. (*People* v. *Belanger* (1966) 243 Cal.App.2d 654, 659 [52 Cal.Rptr. 660].) The engine compartment, however, was not observable without lifting up the hood. It has been held that if a peace officer observes a firearm in the trunk of an automobile parked in an area in which possession of a loaded gun is prohibited by Penal Code section 12031, he may open even a locked trunk to ascertain whether the weapon is loaded. (*People* v. *DeLong* (1970) 11 Cal.App.3d 786, 790-793 [90 Cal.Rptr. 193].) The People concede that without the officers' personal observation of the weapon being in the vehicle, they did not have the right to arrest defendant for a violation of section 12031, which is a misdemeanor (Pen. Code, § 836, subd. 1; *People* v. *Brown* (1955) 45 Cal.2d 640, 643 [290 P.2d 528].)[6] They contend nevertheless that section 12031 authorizes them to search without probable

---

[6]"When an arrest for a misdemeanor is made upon the complaint of one other than the arresting officer, it is proper to require the securing of a warrant to justify the arrest." (*Coverstone* v. *Davies* (1952) 38 Cal.2d 315, 321 [239 P.2d 876], cert. den. 344 U.S. 840 [97 L.Ed. 653, 73 S.Ct. 50].) Moreover in this case, a citizen's arrest was not justified since they did not know that the shotgun was loaded nor the length of its barrel.

cause to arrest.[7] This contention of statutory justification cannot be upheld short of the circumstances set forth in *DeLong*. ▮ However, aside from the statute, we feel that the exigent circumstances of this case permitted a warrantless look into the engine compartment without running afoul of the proscriptions of the Fourth Amendment.

We reach this result from teachings to be gleaned from *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868] and *Chambers* v. *Maroney* (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975]. Those pertinent to this case are: The Fourth Amendment does not forbid all searches and seizures but only those which are unreasonable. **(3)** Even in the absence of reasonable and probable cause to arrest a suspect, an officer investigating a possible crime based upon a suspect's suspicious behavior may take necessary precautionary measures to ascertain that the suspect does not have access to weapons in order to protect himself, others in the vicinity, or the prospective victims of violence, pending an on-the-spot investigation, even to the extent of invading the suspect's security of his person. The officer need not be absolutely certain that the suspect has access to such weapon. It is sufficient if the circumstances would warrant a reasonably prudent man in the belief that his personal safety or that of others is in danger. Under exigent circumstances, compliance with warrant requirements may be excused. ▮ Probable cause to search an automobile may proceed on a wholly different theory from that justifying a search incident to an arrest. There is a recognized difference between the search of a store, dwelling, or other structure and that of an automobile because the high mobility of the motor vehicle makes it impracticable to obtain a warrant in most instances. If there is probable cause to obtain a search warrant from a magistrate, for constitutional purposes there is no difference between seizing and holding a car before presenting the probable cause issue to a magistrate and carrying out an immediate search without a warrant.

Furthermore, as stated in *People* v. *DeLong* (1970) *supra,* 11 Cal.App.3d at page 792: "What is 'probable' in the case of a weapon must be tested by different standards from those which apply to other objects . . . [because of] the nature of weapons. . . ."

▮ In the instant case, the officers were responding to a radio call for assistance. From two known citizens, and a third unnamed citizen living in the area whose statements were corroborated by the other two known citizens, the officers were told that defendant had placed a golf bag, shorter

---

[7]The People do not urge justification of the search on the basis of the officers' having reasonable and probable cause to believe a felony (possession of a sawed-off shotgun (Pen. Code, § 12020)) had been committed, prior to their opening the hood, retrieving the gun, and measuring it.

than the normal golf bag, containing a shotgun, under the hood of his car parked in the parking lot of the hospital premises; that he had retrieved the golf bag from a medical secretary who had found it, much to her surprise, in the back seat portion of her car which was parked just in front of defendant's car at the time of her discovery. They were further informed that defendant, an outpatient of the hospital, had become drunk on the hospital premises the previous day and been told to leave, which indicates a motive for possible unlawful use of the firearm. Upon ascertaining who defendant was and his acknowledgment of the ownership of the vehicle, he was asked "if he had a gun?" and in response defendant replied, "No," which is in conflict with information furnished by the other civilian witnesses who were reliable. (*People* v. *Hogan* (1969) 71 Cal.2d 888, 890, 891 [80 Cal.Rptr. 28, 457 P.2d 868].) One does not normally carry or transport objects in the engine compartment of one's car, so that defendant's placing the weapon in this unusual part of the vehicle gives rise to a reasonable inference that he is secreting it. It is also inferable that defendant had placed it originally in Mrs. Linn's car so that it would not be easily traceable to him and yet be readily available for the purpose for which he had brought it to the parking lot.

It is unfortunately too common an occurrence in current times that a person told to remove himself from a place because of his intoxicated condition will go home and return with a firearm to inflict harm upon one who told him to leave. Likewise, it is becoming too common an occurrence where police officers investigating a crime get shot by a shotgun secreted or carried in a motor vehicle. The only choices open to the officers here were to make a search of the vehicle without a warrant or else impound it while obtaining a search warrant. Under circumstances here presented, *Chambers* v. *Maroney, supra,* justifies the immediate search without a warrant, although it should be limited to just that area where the officer had reasonable and probable cause to believe that he would find a weapon and to the single purpose of ascertaining whether there is a weapon. If in the course of making this protective search, it develops that there is reasonable and probable cause to believe that a misdemeanor is being committed in his presence or that a felony is or has been committed, he may then arrest the suspect without a warrant. The search for the weapon was for the dual purpose of investigating if a crime was being committed and to interdict defendant's possible use of the weapon either against the officers or other persons, including possibly intended victims of violence, in the area. Certainly, the lifting of a hood of a vehicle parked in a public place is less offensive to a defendant's dignity and security than a frisking of his person would have been.

Since lifting the hood and extracting the shotgun was a reasonable search

under the ambient circumstances of this case, it did not violate the Fourth Amendment. Consequently, the shotgun and the live ammunition recovered were not the products of an illegal search and seizure. The trial judge erred in ruling that the motion to suppress these items under Penal Code section 1538.5 should be granted as a matter of law.

### III.

The order of dismissal is reversed, and the cause is remanded to the trial court to set aside its grant of defendant's Penal Code section 1538.5 motion and to consider the motion de novo consistent with the views set forth in this opinion.

Stephens, Acting P. J., and Reppy, J., concurred.