[No. B168657. Second Dist., Div. Three. May 31, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS MANUEL TAPIA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.B and III.C of the Discussion.

**Counsel**

John Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Ana R. Duarte and James William Bilderback II, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**ALDRICH, J.—**

## I.  INTRODUCTION

Defendant and appellant Jesus Manuel Tapia pointed a firearm at another motorist during a traffic dispute. When officers came to Tapia's residence the next day to investigate, they observed Tapia, who was standing on the

sidewalk in front of his residence, remove a loaded handgun from his pocket and place it inside a vehicle parked in the driveway. The sidewalk where Tapia had been standing was within 1,000 feet of a high school. Tapia was convicted of possession of a firearm in a school zone, in violation of Penal Code section 626.9,[1] and assault with a firearm. At trial, he sought to present, as a defense to the section 626.9 charge, evidence that the sidewalk where he had been standing was on private property, subject to an easement of way granted to a public entity. In the published portion of this opinion, we conclude a sidewalk on an easement of way granted to a public entity does not qualify as private property within the meaning of section 626.9, subdivision (c)(1). In the unpublished portion of this opinion, we reject Tapia's contention that the trial court improperly denied *Pitchess*[2] discovery and limited cross-examination of a witness. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Facts.*

#### 1. *People's case.*

Viewed in accordance with the usual rules governing appellate review (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618]), the evidence relevant to the issues on appeal established the following. At approximately 11:00 p.m. on May 25, 2002, Angel Luggo was double-parked in front of his residence on East 40th Place in Los Angeles, talking to Jose Mecina. Tapia was driving down the street in a sport utility vehicle (SUV) belonging to Ricardo Santoyo, who was a passenger in the SUV. Tapia honked and told Luggo to move his car. Mecina stated, "[t]he street is free," and told Tapia to go around. Tapia exited his vehicle and asked, "Are you talking back to me?" Mecina replied affirmatively, and the two men argued. Tapia punched Mecina. Tapia then pointed a gun at Luggo and told him to move his car. Luggo complied.[3]

In response to Luggo's complaint to police, the next day, May 26, 2002, Los Angeles Police Officers Charles Wunder and Lyman Doster went to the area of 40th Place where the incident had occurred. They observed Tapia, who matched the assailant's description, and Santoyo standing in front of Tapia's residence at 1257 East 40th Place, near a brown Chevrolet Suburban SUV. Santoyo was standing inside the gate on the actual property. Tapia was

---

[1] All further undesignated statutory references are to the Penal Code.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

[3] Santoyo denied at trial that Tapia had pulled a gun on Luggo. However, he admitted telling police that Tapia had pulled out a firearm during the incident. Mecina stated that Tapia had a cellular telephone, not a gun, in his hand.

standing on the sidewalk behind the SUV. As the police car approached, Tapia walked from the sidewalk to the SUV, pulled a loaded blue steel handgun from his pants pocket, and placed it on the front seat of the SUV. To keep Tapia and Santoyo off guard, Doster asked whether the men were stripping a car. Both men were detained and handcuffed.

The sidewalk in front of Tapia's residence, where Tapia had been standing with the gun in his pocket, was 282 feet from Jefferson High School.

### 2. *Defense case.*

Tapia testified that he had been driving his wife home in Santoyo's vehicle when he encountered Luggo's vehicle blocking the street. He could not get around the car without hitting Luggo's vehicle. Tapia honked, and Mecina stated, "This is my block." Tapia exited his car and approached Mecina, but Mecina "came at" Tapia. Tapia put his hand up to protect himself and Mecina backed away. Tapia asked, "What's your problem." He did not possess or point a gun, although he did have a cellular telephone in his hand. Santoyo corroborated this account, as did Tapia's wife Adriana.

As to the next day's events, Tapia testified that when officers first approached, he was "inside of the yard opening the wrought iron fence" to allow access to the SUV. The gun found in the vehicle was Santoyo's, and Tapia had not been holding it at any time that day. Santoyo testified that he placed the gun in his vehicle on May 26, the day after the encounter with Luggo. He was in the process of putting his gun in the car in its case when police pulled up. He placed it on the seat because he did not have time to finish putting it in the case. Santoyo had not given the gun to Tapia.

Tapia admitted that he did not have a concealed weapon permit or permission from the school district to carry a firearm.

### B. *Procedure.*

Trial was by jury. Tapia was convicted of possession of a firearm in a school zone (§ 626.9, subd. (b)) and assault with a firearm (§ 245, subd. (a)(2)). The jury found true an allegation that Tapia personally used a firearm, a handgun, during commission of the assault. (§ 12022.5, subd. (a).) Tapia was placed on probation for three years on condition he serve 365 days in county jail. The trial court also imposed a restitution fine and assessed a suspended parole revocation fine. Tapia appeals.

### III.  DISCUSSION

#### A.  *Preclusion of private property defense.*

##### 1.  *Section 626.9 and the trial court's ruling.*

As noted, Tapia was charged with violation of the Gun-Free School Zone Act of 1995, section 626.9. Section 626.9 prohibits possession of a firearm in an area that the person knows or reasonably should know is a school zone, without permission from specified school authorities.[4] (§ 626.9, subd. (b).) "School zone" is defined as "an area in, or on the grounds of, a public or private school providing instruction in kindergarten or grades 1 to 12, inclusive, or within a distance of 1,000 feet from the grounds of the public or private school." (§ 626.9, subd. (e)(1).) The statute contains several exceptions.[5] Relevant here is subdivision (c)(1), which provides that "Subdivision (b) does not apply to the possession of a firearm under any of the following circumstances: [¶] (1) Within a place of residence or place of business *or on private property, if the place of residence, place of business, or private property is not part of the school grounds and the possession of the firearm is otherwise lawful.*" (Italics added.)

The defense theory was that the sidewalk where officers observed Tapia with the gun on May 26, 2002, was private property, and section 626.9 was therefore inapplicable. Before trial began, Tapia's counsel indicated he intended to present testimonial and documentary evidence to establish that Tapia's father possessed title to the property at 1257 East 40th Place "out to the curb," subject to a public easement for the sidewalk. The prosecutor, on the other hand, sought a ruling that the sidewalk was public, not private, property as a matter of law within the meaning of section 626.9.

After hearing the parties' arguments, the trial court concluded the sidewalk was public property for purposes of section 626.9. It explained, "I think the

---

[4] Section 626.9 provides in pertinent part: "(a) This section shall be known, and may be cited, as the Gun-Free School Zone Act of 1995. [¶] (b) Any person who possesses a firearm in a place that the person knows, or reasonably should know, is a school zone, as defined in paragraph (1) of subdivision (e), unless it is with the written permission of the school district superintendent, his or her designee, or equivalent school authority, shall be punished as specified in subdivision (f). [¶] (c) Subdivision (b) does not apply to the possession of a firearm under any of the following circumstances: [¶] (1) Within a place of residence or place of business or on private property, if the place of residence, place of business, or private property is not part of the school grounds and the possession of the firearm is otherwise lawful."

[5] Among other things, the statute excepts from its scope existing shooting ranges, certain peace officers and military personnel, security guards, and persons licensed to carry firearms pursuant to section 12050 et seq. (§ 626.9, subds. (c)(4), (l), (m), (n), (o).) Subdivision (c)(3) additionally contains an exception for persons who reasonably believe they are in grave danger, under specified circumstances.

letter and spirit of this statute contemplates the protection of children. And otherwise that's what this statute is directed to, is keeping people from possessing . . . guns in a school zone. . . . [¶] I'm going to tell you right now my decision is that it is public property, regardless of whether your client has an easement or has title to that property or not. I don't believe that your client had anything to do with construction of the sidewalk. And I can see by looking [at a photograph of the area] that the sidewalk runs throughout the whole neighborhood. So it must have been done for a common purpose, and it runs directly right in front [of] the high school or the school that the statute seems to be protecting." The trial court observed that the general public, as well as schoolchildren, used the sidewalk.

The trial court subsequently instructed the jury, "Possession of a firearm within a school zone is not unlawful if the firearm is being lawfully transported or if the firearm's possession is within a place of residence or on private property, providing the place of residence or private property is not part of the school grounds. Possession of the firearm within a school zone is otherwise not lawful." *"If you find, beyond a reasonable doubt, that the sid[e]walk in front of 1257 East 40th Place, Los Angeles, California, is a public place, then that sidewalk is not private property within the meaning of Penal Code Section 626.9(b). [¶] The term 'public place' means any place which is open to common or general use, participation and enjoyment by members of the public."* (Italics added.)

## 2. Discussion.

Tapia contends both the exclusion of the proffered evidence and the instruction were erroneous, and the purported errors deprived him of his constitutional right to present a defense. (See, e.g., *People v. Cash* (2002) 28 Cal.4th 703, 727 [122 Cal.Rptr.2d 545, 50 P.3d 332].) We agree that a portion of the trial court's instruction was erroneous. However, we conclude that, as a matter of law, a sidewalk on an easement of way which has been granted to a public entity is not private property within the meaning of section 626.9.[6] The trial court's error was therefore harmless beyond a reasonable doubt, and Tapia was not prevented from presenting a viable defense.

### a. *A sidewalk on an easement of way granted to a public entity is not "private property" within the meaning of section 626.9.*

■ When interpreting a statute, we are guided by the familiar principle that we must ascertain the Legislature's intent so as to effectuate the purpose

---

[6] As the proffered evidence was excluded, it is unclear whether Tapia's father actually had title to the property, and how the easement was created. For purposes of argument, we assume Tapia would have been able to prove his father possessed title to property as represented, and that the sidewalk was on an easement of way granted to a public entity.

of the law. (*People v. Leal* (2004) 33 Cal.4th 999, 1007 [16 Cal.Rptr.3d 869, 94 P.3d 1071]; *People v. Lopez* (2003) 31 Cal.4th 1051, 1056 [6 Cal.Rptr.3d 432, 79 P.3d 548]; *People v. Toney* (2004) 32 Cal.4th 228, 232 [8 Cal.Rptr.3d 577, 82 P.3d 778].) "In determining intent, we must look first to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.] If the statutory language is clear and unambiguous, the plain meaning of the statute governs. [Citation.] 'If, however, the language supports more than one reasonable construction, we may consider "a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.]' " (*People v. Lopez, supra,* at p. 1056; see *In re Young* (2004) 32 Cal.4th 900, 906 [12 Cal.Rptr.3d 48, 87 P.3d 797]; *People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].) ■ We examine the statutory language in the context in which it appears, and adopt the construction that best harmonizes the statute internally and with related statutes. (*People v. Jefferson, supra,* at p. 94; *In re Danny H.* (2002) 104 Cal.App.4th 92, 97 [128 Cal.Rptr.2d 222].)

Under the facts presented here, the sidewalk was clearly neither a place of business nor a place of residence. Our task, therefore, is to determine whether it qualified as "private property" within the meaning of section 626.9, a question which appears to be an issue of first impression. Although section 626.9 contains definitions of several terms used therein, "private property" is not among them. (See § 626.9, subd. (e)(1) [defining school zone], (2) [defining firearm], (3) [defining locked container], (4) [defining concealed firearm].)

The trial court, through its jury instruction, concluded the sidewalk was *not* private property within the meaning of section 626.9 if it was a "public place," i.e., an area "open to common or general use, participation and enjoyment by members of the public." (See CALJIC No. 16.431.) The Legislature has often employed the term "public place," or "public area," in the Penal Code. (See *In re Danny H., supra,* 104 Cal.App.4th at pp. 98–100.) When construing statutes forbidding certain behavior in a "public place" or "public area," California courts have routinely held that privately-owned property can constitute a public place. In *In re Danny H., supra,* at pages 104–105, for example, we considered whether a railroad trestle was a public place for purposes of section 594.1, subdivision (e)(1), which prohibits a person under 18 from possessing an aerosol container of paint for the purpose of defacing property while on, inter alia, any public place. (104 Cal.App.4th at p. 97.) We concluded that, based upon the totality of the circumstances, the trestle was a public place for purposes of section 594.1, subdivision (e)(1). (104 Cal.App.4th at pp. 105–106.) The fact the railroad trestle was private

property did not preclude a finding it was a public place, where the trestle was unenclosed, visible to the public, and readily accessible. (*Ibid.*)

In *People v. Jimenez* (1995) 33 Cal.App.4th 54, 59–60 [39 Cal.Rptr.2d 12], the defendant sold narcotics in a residential driveway within 1,000 feet of a school, while classes were in session. His sentence was enhanced pursuant to Health and Safety Code section 11353.6, which applied, inter alia, to the sale of controlled substances within public areas within 1,000 feet of schools. (*Jimenez, supra,* at pp. 57–58.) The court concluded the residential driveway was a public area within the meaning of Health and Safety Code section 11353.6. (*Jimenez, supra,* at p. 60.) It reasoned that "public area" was not synonymous with "public property." (*Id.* at p. 59.) Instead, for purposes of Health and Safety Code section 11353.6, "public area" encompassed not only publicly-owned locations "such as streets, sidewalks and bus stops" but also "those portions of private property which are readily accessible to the public." (*Jimenez, supra,* at p. 60 [collecting cases]; see also, e.g., *In re Zorn* (1963) 59 Cal.2d 650, 652 [30 Cal.Rptr. 811, 381 P.2d 635] [a barbershop was a public place for purposes of ordinance prohibiting willfully and unlawfully appearing in a state of intoxication in a public place open to public view; the barbershop was " ' "Common to all or many; general; open to common use" ' " and open to common participation and enjoyment]; *People v. Vega* (1971) 18 Cal.App.3d 954, 958 [96 Cal.Rptr. 391] [market parking lot, being accessible to members of the public having business with the market, was a public place for purposes of section 12031, which prohibited carrying a loaded firearm in a vehicle while in a public place]; *People v. Perez* (1976) 64 Cal.App.3d 297, 301 [134 Cal.Rptr. 338] [apartment hallway was a public place because it was readily accessible to all who wished to go there]; *People v. Olson* (1971) 18 Cal.App.3d 592, 598 [96 Cal.Rptr. 132] [driveway, lawn, and porch in front of defendant's house were public places for purposes of section 647, subdivision (f), in that they were accessible and open to common or general use]; *People v. Belanger* (1966) 243 Cal.App.2d 654, 657–659 [52 Cal.Rptr. 660] [defendant found intoxicated inside a private automobile parked along a public street was in a public place, for purposes of section 647, subd. (f); public streets, highways, and sidewalks are public places]; *People v. Green* (1971) 15 Cal.App.3d 766, 771 [93 Cal.Rptr. 433] [hospital parking lot, accessible to members of public having business with the hospital, was a public place]; cf. *People v. White* (1991) 227 Cal.App.3d 886, 890–893 [278 Cal.Rptr. 48] [defendant's fenced front yard, containing three dogs which acted as deterrents to public access, was not a public place for purposes of section 647, subdivision (f), even though the yard was open to public view].)

■ The difficulty with the trial court's application of these principles to the instant case is that, unlike the statutes at issue in the aforementioned authorities, section 626.9 does not use the terms "public place" or "public

area." To the contrary, section 626.9 creates an exception for firearm possession on "private property." "When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning. [Citation.]" (*People v. Trevino* (2001) 26 Cal.4th 237, 242 [109 Cal.Rptr.2d 567, 27 P.3d 283]; see also *People v. Bland* (2002) 28 Cal.4th 313, 337 [121 Cal.Rptr.2d 546, 48 P.3d 1107] [" ' " 'It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.' " [Citation.]' "]; *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 576 [273 Cal.Rptr. 584, 797 P.2d 608].) That the Legislature did not necessarily intend section 626.9 to be governed by the "public place" analysis is also suggested by the exception for places of business. It is readily apparent that a great many places of business are open to common use and enjoyment by members of the public. Nonetheless, section 626.9's exception expressly encompasses places of business.

Webster's Dictionary defines "private" as, among other things, "single, private, set apart, for himself"; "intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public"; or "belonging to or concerning an individual person, company, or interest." (Webster's 3d New Internat. Dict. (1993) pp. 1804–1805.) Black's Law Dictionary defines "private" as, inter alia, "[r]elating or belonging to an individual, as opposed to the public or the government." (Black's Law Dict. (7th ed. 1999) p. 1213.) Private property is defined as "[p]roperty—protected from public appropriation—over which the owner has exclusive and absolute rights." (Black's Law Dict., *supra,* at p. 1233.) Civil Code section 669 provides that, "All property has an owner, whether that owner is the State, and the property public, or the owner an individual, and the property private." Civil Code section 654 states, "The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others. In this Code, the thing of which there may be ownership is called property." Thus, two interpretations of the phrase "private property" are possible: one focused on ownership, the other focused on the use made of the property.

Prior to its amendment in 1994, section 626.9 prohibited firearm possession on school grounds. (*People v. Mejia* (1999) 72 Cal.App.4th 1269, 1271–1272 [85 Cal.Rptr.2d 690].) In 1994, the Legislature expanded the scope of the statute to prohibit firearm possession, not only on school grounds, but within a 1,000-foot "school zone" around campuses. (*Id.* at pp. 1271–1272; Stats. 1994, ch. 1015, § 1, pp. 6191–6193.) The purpose of the law, as articulated by its author, Assemblywoman Doris Allen, was to foster school safety and decrease violence on school campuses. (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 645 (1993–1994 Reg. Sess.) Jan. 11, 1994, p. 2; Sen. Com. on Judiciary, Background Information Form on Assem. Bill No. 645

(1993–1994 Reg. Sess.); Assemblywoman Allen, letter to Governor Wilson, Sept. 8, 1994 [stating that Assembly Bill No. 645 would make schools safer].) On the other hand, a letter from Assemblywoman Allen to Governor Wilson, urging him to sign the legislation, indicates the bill's author was "very conscientious about protecting the rights of gun-owners." (Assemblywoman Allen, letter to Governor Wilson, Sept. 8, 1994.) To that end, the author stated the bill included "several provisions" to ensure "law abiding citizens would not be unjustly penalized under the bill." (*Ibid.*)

The legislative history of the Gun-Free School Zone Act of 1995 further indicates the law was modeled after former 18 United States Code section 922(q), the "Gun-Free School Zones Act of 1990." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 645 (1993–1994 Reg. Sess.), Jan. 11, 1994, pp. 2–3; Assemblywoman Allen, letter to Governor Wilson, Sept. 8, 1994 [stating that Assembly Bill No. 645 codified "the federal 1,000 foot gun-free zone law . . ."].) The federal statute was concerned with protecting school children from gun-related violence on or near schools. (*U.S. v. Campbell* (8th Cir. 1994) 12 F.3d 147, 148.) It prohibited possession of firearms in school zones (18 U.S.C. § 922(q)(1)(A)), defined as " 'in, or on the grounds of, a public, parochial or private school' or 'within a distance of 1,000 feet from the grounds of a public, parochial or private school.' [18 U.S.C.] § 921(a)(25)." (*United States v. Lopez* (1995) 514 U.S. 549, 551, & fn. 1 [131 L.Ed.2d 626, 115 S.Ct. 1624].) The federal statute provided that it did not apply to the possession of a firearm "on private property not part of school grounds." (18 U.S.C. former § 922(q)(1)(B)(i); Crime Control Act of 1990, Pub.L. No. 101-647, § 1702 (Nov. 29, 1990) 104 Stat. 4789, 4844–4845.) In 1995, the United States Supreme Court invalidated former 18 United States Code section 922(q), holding that in enacting the statute, Congress had exceeded its authority to regulate state commerce. (*United States v. Lopez, supra,* 514 U.S. at pp. 551, 561.) Our research has disclosed no helpful interpretation by the federal courts of the federal "private property" exception which could shed light on the California Legislature's use of that term.

Early drafts of Assembly Bill No. 645 mirrored the federal statute's language in regard to the private property exception, i.e., that the prohibition on firearm possession within 1,000 feet of a school did not apply "[o]n private property not part of school grounds." (See, e.g., Assem. Bill No. 645 (1993–1994 Reg. Sess.) as amended Jan. 3, 1994.) Assembly Bill No. 645 was eventually amended in the Senate to clarify that the private property exception included a " 'residence or place of business' as well as private property if other conditions are met." (Sen. Com. on Judiciary, Analysis of Sen. Floor Amends. to Assem. Bill No. 645 (1993–1994 Reg. Sess.); see Sen. Amend. to Assem. Bill No. 645 (1993–1994 Reg. Sess.) Aug. 22, 1994.) From the legislative history, therefore, the most we can

reasonably glean is the unsurprising fact that the intent of the Legislature in enacting the law was to further the safety of students at and on their way to and from school.

A similar "private property" exclusion is contained in section 12026. Section 12025 prohibits carrying a concealed firearm. (§ 12025, subd. (a).) Section 12026 creates an exception to section 12025, providing that the prohibition on carrying a concealed firearm does not apply to United States citizens or legal residents over 18,[7] who carry a concealable firearm, "either openly or concealed, anywhere within the citizen's or legal resident's *place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident* . . . ." (§ 12026, subd. (a), italics added.) Likewise, section 12031 prohibits the carrying of a loaded firearm, subject to various exceptions. (§ 12031, subd. (a)(1).) Section 12031, subdivision (h), provides that the statute does not prohibit "any person in lawful possession of private property from having a loaded firearm on that property." The case law construing these provisions, however, sheds little light on the meaning of private property under the circumstances presented here.

■ However, resolution of the instant matter does not require that we determine precisely what "private property" encompasses for purposes of section 626.9. Whatever else the term means, we believe it cannot reasonably be applied to a sidewalk on an easement of way which has been granted to a public entity. The obvious purpose of the statute is to protect children at and near schools. This purpose would be frustrated if the very public sidewalks upon which schoolchildren walk to school were considered outside the scope of the law. We must interpret the law to give it a " ' "reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." ' [Citations.]" (*In re Reeves* (2005) 35 Cal.4th 765, fn. 9 [28 Cal.Rptr.3d 4]; see *People v. Townsend* (1998) 62 Cal.App.4th 1390, 1395 [73 Cal.Rptr.2d 438].) " 'The complexities of the social problems dealt with by the Legislature require that a practical construction be given to the language employed by the draftsmen of legislation lest their purposes be too easily nullified by overrefined inquiries into the meaning of words.' " (*People v. Heffner* (1977) 70 Cal.App.3d 643, 649 [139 Cal.Rptr. 45].)

■ Moreover, a public sidewalk on an easement of way which has been granted to a public entity cannot fairly be characterized as private property, as that term is used in section 626.9. ■ " 'An easement is an interest in the

---

[7] The exception does not apply to persons prohibited from possessing firearms by sections 12021, 12021.1, and sections 8100 and 8103 of the Welfare and Institutions Code. (§ 12026, subd. (a).)

land of another, which entitles the owner of the easement to a limited use or enjoyment of the other's land.' [Citation.]" (*Committee to Save the Beverly Highlands Homes Assn. v. Beverly Highlands Homes Assn.* (2001) 92 Cal.App.4th 1247, 1269 [112 Cal.Rptr.2d 732]; see *Burch v. Gombos* (2000) 82 Cal.App.4th 352, 362 [98 Cal.Rptr.2d 119]; see generally 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 434, p. 614.) "[A] landowner who grants an easement to a governmental entity for public highway purposes possesses no right with respect to passage and travel thereover that is greater than that of the general public." (*People v. Sweetser* (1977) 72 Cal.App.3d 278, 285 [140 Cal.Rptr. 82].) While ownership does not always mean absolute dominion (*Church of Christ in Hollywood v. Superior Court* (2002) 99 Cal.App.4th 1244, 1255 [121 Cal.Rptr.2d 810]), " 'the right to exclude persons is a fundamental aspect of private property ownership.' [Citation.]") (*Id.* at p. 1254.) Here, the easement was an interest in the land, apparently owned by a public entity, and entitled to be enjoyed by the public. Tapia, or his father, did not have exclusive rights over the sidewalk, nor was it protected from public appropriation.

b.  *Vagueness.*

Tapia argues that, assuming a sidewalk on an easement of way granted to a public entity is not private property within the meaning of the statute, section 626.9 is unconstitutionally vague. We disagree.

■  "Due process requires fair notice of what conduct is prohibited. A statute must be definite enough to provide a standard of conduct for its citizens and guidance for the police to avoid arbitrary and discriminatory enforcement. [Citations.] 'Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.' [Citation.]" (*People v. Townsend, supra,* 62 Cal.App.4th at pp. 1400–1401; see also *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1115 [60 Cal.Rptr.2d 277, 929 P.2d 596]; *People v. Ervin* (1997) 53 Cal.App.4th 1323, 1328 [62 Cal.Rptr.2d 231].) The void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. [Citations.]" (*Kolender v. Lawson* (1983) 461 U.S. 352, 357 [75 L.Ed.2d 903, 103 S.Ct. 1855].)

■  The starting point of our analysis is the presumption that legislative enactments must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. (*People v. Ervin, supra,* 53 Cal.App.4th at p. 1328; *People v. Fannin* (2001) 91 Cal.App.4th 1399, 1403 [111 Cal.Rptr.2d

496] [the constitutionality of a statute designed to protect the public from dangerous weapons must be sustained if possible].) A statute will not be held void for vagueness if any reasonable and practical construction can be given its language, or if its terms may be made reasonably certain by reference to other definable sources. (*People ex rel. Gallo v. Acuna, supra,* 14 Cal.4th at p. 1117; *People v. Townsend, supra,* 62 Cal.App.4th at p. 1401.) Reasonable specificity is all that is required. (*People ex rel. Gallo v. Acuna, supra,* at p. 1117; *People v. Townsend, supra,* at p. 1401.) The fact that a statute contains "one or more ambiguities requiring interpretation does not make the statute unconstitutionally vague on its face [citation] . . . ." (*In re Jorge M.* (2000) 23 Cal.4th 866, 886 [98 Cal.Rptr.2d 466, 4 P.3d 297]; *People v. Hazelton* (1996) 14 Cal.4th 101, 109 [58 Cal.Rptr.2d 443, 926 P.2d 423].) " 'Many, probably most, statutes are ambiguous in some respects and instances invariably arise under which the application of statutory language may be unclear.' [Citation.]" (*People v. Townsend, supra,* at pp. 1401–1402.)

Applying these principles to section 626.9 under the circumstances of the instant case, we conclude the statute is not unconstitutionally vague. The legislative purpose of the statute to protect children from firearms should be readily apparent to an ordinary person. (See *People v. Townsend, supra,* 62 Cal.App.4th at p. 1401 [even where a statute contains "somewhat imprecise language, secondary sources such as legislative history may clarify statutory terms sufficiently to meet the constitutional requirement of fair notice. [Citations.] 'This analytical framework is consistent with the notion that we "require citizens to apprise themselves not only of statutory language, but also of legislative history, subsequent judicial construction, and underlying legislative purposes." ' [Citations.]"]; *People v. Fannin, supra,* 91 Cal.App.4th at p. 1401.) As we have explained, allowing firearms on the very sidewalks upon which children walk to and from school could hardly be understood to further this legislative purpose. The property in question was subject to an easement of way, owned, apparently, by a public entity. Thus, any property interest owned by Tapia's father was not of a sort that a reasonable citizen would understand to be private.

Accordingly, because Tapia's defense that the sidewalk was private property was not viable, the trial court did not infringe his right to present a defense by excluding evidence on the topic. (Cf. *People v. Dillard* (1984) 154 Cal.App.3d 261, 267 [201 Cal.Rptr. 136].)

c. *The instructional error was harmless beyond a reasonable doubt.*

Likewise, the trial court's erroneous instruction was harmless beyond a reasonable doubt, for two reasons. (See *People v. Jimenez, supra,* 33 Cal.App.4th at p. 62 [applying reasonable doubt standard to trial court's

failure to instruct the jury to determine whether a private driveway was a public area].) First, because the sidewalk was not private property within the meaning of section 626.9 as a matter of law, it is clear beyond a reasonable doubt that Tapia would not have achieved a more favorable result had the trial court omitted the challenged language.

██     Second, even if the sidewalk had constituted private property, Tapia did not fall within the ambit of section 626.9's private property exception. Under the plain language of the statute, the private property exception applies *only* if the possession occurred on private property *and* the "possession of the firearm is otherwise lawful." (§ 626.9, subd. (c)(1).) Here, if Tapia possessed the firearm as described by the officers, his possession could not have been "otherwise lawful." As noted, section 12031, subdivision (a)(1) provides that a "person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person . . . *while in any public place or on any public street* in an incorporated city . . . ." (Italics added.) According to the officers, Tapia was carrying a loaded firearm on the sidewalk in front of the house. As we have explained, "public place," for purposes of section 12031, does not necessarily mean public property, but refers to an area accessible to the public. (*People v. Vega, supra,* 18 Cal.App.3d at p. 958 [market parking lot was a public place for purposes of section 12031]; cf. *People v. Green, supra,* 15 Cal.App.3d at p. 771 [private hospital's parking lot was a public place because it was accessible to members of the public]; *In re Zorn, supra,* 59 Cal.2d at pp. 651–652 [for purposes of ordinance prohibiting intoxication in "any public place," barbershop was a public place as it was open to general use, participation, and enjoyment]; *People v. Jimenez, supra,* 33 Cal.App.4th at pp. 57–58 [public area, for purposes of Health and Safety Code section 11353.6, includes those portions of private property which are readily accessible to the public].) It was undisputed that the sidewalk was readily accessible to, and used by, the public.

Tapia counters that this analysis fails to take into account *his* side of the story—i.e., that he was *not* on the sidewalk but was in the yard opening the gate, and did not have the gun, when officers arrived. But if the jury had credited this account, it could not have convicted him of possession of the firearm, in that he claimed he did not have the gun in his possession.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 1153.

## DISPOSITION

The judgment is affirmed.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied June 28, 2005, and appellant's petition for review by the Supreme Court was denied September 7, 2005.