[No. B170281. Second Dist., Div. Three. Oct. 31, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH CARL PALMER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.B through III.F of the Discussion. The portions of this opinion to be deleted from publication are those portions enclosed within double brackets, [[]].

1144

**COUNSEL**

Susan Pochter Stone, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters, Lawrence M. Daniels and Susan Sullivan Pithey, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ALDRICH, J.—**

## I.

## INTRODUCTION

Defendant and appellant Ralph Carl Palmer committed an armed robbery of a Stein Mart store. As Palmer was attempting to drive from the crime scene, La Verne Police Officer Michael Burks stopped Palmer in the store parking lot. As Burks was exiting his patrol vehicle, Palmer suddenly exited his car, swiveled around, and shot at Burks. Burks dove for cover behind his patrol vehicle's door, breaking his ankle in the process. A jury convicted Palmer of second degree robbery, attempted murder, and assault on a peace officer with a semiautomatic firearm. It also found true allegations that Palmer personally and intentionally used and discharged a firearm during commission of the attempted murder and assault, proximately causing great

bodily injury. (Pen. Code, § 12022.53, subd. (d).)[1] As a result of the jury's findings on the section 12022.53, subdivision (d) allegations, Palmer's sentence was enhanced by a prison term of 25 years to life.

■ In the published portion of this opinion, we conclude that the section 12022.53, subdivision (d) enhancement for discharging a firearm, proximately causing injury, is satisfied even though the injury at issue is not a bullet wound but a broken ankle resulting from the victim's evasive action. We further conclude the evidence was sufficient to prove the injury was caused by the discharge of the gun, rather than the mere pointing of the gun, and defense counsel therefore was not ineffective for failing to advance an insufficiency theory. Finally, we conclude that the jury was not mislead by CALJIC No. 17.19.5.

In the unpublished portion of the opinion, we consider and reject Palmer's contentions that the trial court committed instructional error; his counsel was ineffective; the trial court erred by allowing admission of evidence of a prior conviction and prison term; the trial court erred by denying his *Pitchess*[2] motion for in camera review of peace officer records; the prosecutor committed prejudicial misconduct; jurors committed prejudicial misconduct; the trial court failed to exercise informed discretion when sentencing him; and his sentence was imposed in violation of *Blakely v. Washington.*[3]

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts.*

On the evening of December 23, 2001, Palmer robbed three employees at a La Verne Stein Mart store. Palmer, who was wearing a beanie with a star embroidered on the front, and a bandanna covering his face from the nose down, entered the store carrying a semiautomatic firearm. He approached cashier Dustin Figueroa, who was counting the money in the register, pointed the gun at Figueroa, and told him to leave the register open. Palmer took bills from the register and placed them into a black pouch he was carrying.

Palmer then approached cashier Sara Guillen. While holding the gun, he told her to "open [her] till." She backed away and allowed Palmer to remove money from the register. Palmer took only bills, not coins.

---

[1] All further undesignated statutory references are to the Penal Code.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

[3] *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531].

Assistant manager Jill Cochran was at the front of the store when Palmer entered. Alarmed by the fact he was wearing a bandanna over the lower half of his face, she headed to the customer service desk to telephone police. Palmer displayed the gun and told her not to move.

After removing money from the two registers, Palmer departed. Cochran telephoned police.

La Verne Police Officer Michael Burks, who was on patrol without a partner, happened to be in the Stein Mart parking lot when Palmer hastily departed from the store. Palmer was no longer wearing the bandanna over his face. When Palmer saw Burks, Palmer entered a dark-colored Mazda. As Palmer was backing out, Burks received a radio call regarding the robbery. Because the description of the robber matched Palmer's appearance, Burks drove behind the Mazda and activated the patrol car's lights. Palmer "almost instantaneously" stopped the Mazda. As Burks was exiting his patrol car, Palmer suddenly stepped out of the driver's seat, swiveled around with the gun, and fired a shot at Burks. Burks dove behind his open car door, pivoting on and breaking his ankle in the process.[4] A bullet hit the patrol vehicle's driver's side mirror. Burks fired approximately 10 shots at Palmer, but struck the pavement because he was unable to aim due to his ankle injury. Palmer drove from the scene. Burks notified a police dispatcher of a portion of Palmer's license plate.

Palmer sped down Foothill Boulevard, committing various traffic violations and accelerating to speeds up to 100 miles per hour. Travis Bauer, an off-duty police officer for the City of Covina, observed Palmer's driving. He followed Palmer and telephoned police. Eventually Palmer crashed into a chain link fence. Bauer approached Palmer's vehicle to determine whether anyone was hurt. Palmer emerged from the driver's side and fled, eluding authorities.

The Mazda was determined to belong to Palmer's girlfriend, Sonja Edwards. Edwards reported the car as stolen approximately one hour after the crash. In the Mazda, officers discovered, among other things, an employee identification card bearing Palmer's name and photograph, and a roll of film that, when developed, contained a photograph of Palmer. Eight hundred dollars, the same amount taken from the Stein Mart store, was also discovered in the car. The first four digits of the vehicle's license plate corresponded to those reported to the dispatcher by Officer Burks. The vehicle's airbags had deployed during the crash, and Palmer was the "major donor" of DNA found on the driver's side airbag, suggesting he was the person who was

---

[4] Burks's injury required that he wear a cast for three to four months. At the time of trial, he was still suffering swelling and bruising in his foot as a result of the break.

struck by the airbag during the collision. Edwards told police that Palmer owned a white beanie with a star logo embroidered on the front.

## B. *Procedure.*

Trial was by jury. Palmer was convicted of attempted willful, deliberate, and premeditated murder (§§ 664, 187, subd. (a)); assault on a peace officer with a semiautomatic firearm (§ 245, subd. (d)(2)); and three counts of second degree robbery (§ 211). The jury further found true allegations that Palmer attempted to murder a peace officer engaged in the performance of his duties; personally and intentionally used and discharged a firearm during commission of the attempted murder and assault, proximately causing great bodily injury (§ 12022.53, subds. (b), (c), (d)); and personally used a firearm during commission of the robberies (§ 12022.53, subd. (b)). In a bifurcated proceeding, the trial court found true allegations that Palmer had suffered three prior serious or violent felonies (§§ 667, subd. (a)(1), 667, subds. (b)–(i), 1170.12, subds. (a)–(d).) The trial court sentenced Palmer to a term of 155 years to life in prison, and imposed a $10,000 restitution fine and a stayed parole revocation fine in the same amount. Palmer appeals.

## III.

## DISCUSSION

### A. *Issues related to the section 12022.53, subdivision (d) enhancements.*

As noted, Palmer's sentence was enhanced as a result of the jury's findings that he personally discharged a firearm, proximately causing great bodily injury to Officer Burks. Palmer challenges the jury's true findings on the section 12022.53, subdivision (d) enhancements on several bases. The premise underlying each of Palmer's claims is that Officer Burks dove for cover and broke his ankle in response to Palmer's act of *pointing* the gun, not *discharging* the gun. Therefore, he urges, the *discharge* was not a proximate cause of Burks's injury within the meaning of section 12022.53, subdivision (d). He also asserts that section 12022.53, subdivision (d) only applies when the victim's injury is "proximately caused by a discharged bullet," not when the injury was caused by the victim's evasive action. We reject Palmer's contentions.

### 1. *Section 12022.53, subdivision (d)'s proximate cause and injury requirements.*

 Section 12022.53, also known as the "10-20-life" law (Assem. Bill No. 4 (1997–1998 Reg. Sess.)), was enacted in 1997 to substantially increase

the penalties for using firearms in the commission of enumerated felonies, including, as relevant here, attempted murder and assault on a peace officer with a firearm. (§ 12022.53, subd. (a)(1), (7), (18); *People v. Oates* (2004) 32 Cal.4th 1048, 1052 [12 Cal.Rptr.3d 325, 88 P.3d 56]; *People v. Garcia* (2002) 28 Cal.4th 1166, 1171 [124 Cal.Rptr.2d 464, 52 P.3d 648]; *People v. Martinez* (1999) 76 Cal.App.4th 489, 493 [90 Cal.Rptr.2d 517].) The statute prescribes sentence enhancements (prison terms of 10 years, 20 years, and 25 years to life) for increasingly serious circumstances of firearm use. (*People v. Oates, supra,* at p. 1052; *People v. Martinez, supra,* at p. 493.) Section 12022.53, subdivision (b) requires imposition of an additional, consecutive term of 10 years when the defendant personally *uses* a firearm during commission of the crime. Subdivision (c) requires imposition of an additional, consecutive 20-year term when the defendant personally and intentionally *discharges* a firearm during commission of the crime. ■ Subdivision (d), the provision at issue here, requires imposition of an additional, consecutive 25-years-to-life term when the defendant "personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice . . . ." (§ 12022.53, subd. (d); see *People v. Garcia, supra,* at p. 1171.)

■ "In construing a statute, our task is to determine the Legislature's intent and purpose for the enactment. [Citation.] We look first to the plain meaning of the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity in the statutory language, its plain meaning controls; we presume the Legislature meant what it said. [Citation.] 'However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.' [Citations.]" (*People v. Garcia, supra,* 28 Cal.4th at p. 1172; see also, e.g., *People v. Leal* (2004) 33 Cal.4th 999, 1007 [16 Cal.Rptr.3d 869, 94 P.3d 1071]; *People v. Lopez* (2003) 31 Cal.4th 1051, 1056 [6 Cal.Rptr.3d 432, 79 P.3d 548]; *People v. Tapia* (2005) 129 Cal.App.4th 1153, 1160–1161 [29 Cal.Rptr.3d 158].) We examine the statutory language in the context in which it appears, and adopt the construction that best harmonizes the statute internally and with related statutes. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441]; *People v. Tapia, supra,* at p. 1161.)

■ The parties do not dispute that for the section 12022.53, subdivision (d) enhancement to apply, the discharge of the firearm must be the proximate cause of the victim's injury. We agree. Subdivision (d) provides: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 12034, personally and intentionally discharges a firearm and

proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."[5] Our Supreme Court has interpreted this language to mean that "[t]he enhancement applies so long as defendant's personal discharge of a firearm was a proximate, i.e., a substantial, factor contributing to the result." (*People v. Bland* (2002) 28 Cal.4th 313, 338 [121 Cal.Rptr.2d 546, 48 P.3d 1107]; see also *People v. Garcia, supra,* 28 Cal.4th at p. 1169, fn. omitted ["Under Penal Code section 12022.53, subdivision (d), a defendant convicted of a qualifying felony who intentionally and personally discharges a firearm, proximately causing great bodily injury or death, is subject to an additional term of 25 years to life."]; *People v. Martinez, supra,* 76 Cal.App.4th at p. 495 ["25 years to life if the defendant's intentional discharge of the firearm proximately caused great bodily injury"].) Read in the context of the statutory scheme, the plain language of subdivision (d) clearly supports this interpretation. If there was any doubt, the legislative history of the statute is replete with evidence that the Legislature intended subdivision (d) to apply when the discharge of the firearm was the proximate cause of the injury.[6] (See Legis. Counsel's Dig., Assem. Bill No. 4 (1997–1998 Reg. Sess.) ["If great bodily injury was *proximately caused to any person other than an accomplice as a result of the firearm being discharged* under those circumstances, the person would be punished by an additional term of 25 years to life in the state prison . . . ." (italics added)]; Assem. Com. on Public Safety, Rep. on Assem. Bill No. 4 (1997–1998 Reg. Sess.) as amended Apr. 9, 1997, p. 1 [Assembly Bill No. 4 "[p]rovides that a 25-years-to-life enhancement shall also apply to any person who intentionally *discharges a firearm so as to proximately cause great bodily injury* to another person during the commission of [enumerated crimes]" (italics added)]; *People v. Valencia* (2000) 82 Cal.App.4th 139, 146–147 [98 Cal.Rptr.2d 37], and materials cited therein].)

■ We believe it is equally clear that a defendant can proximately cause injury by discharging a firearm within the meaning of section 12022.53, subdivision (d) *even if his or her bullet does not actually strike the victim.*

---

[5] When Palmer committed the crimes in 2001, section 12022.53, subdivision (d) provided: "Notwithstanding any other provision of law, any person who is convicted of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 12034, and who in the commission of that felony intentionally and personally discharged a firearm and proximately caused great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by a term of imprisonment of 25 years to life in the state prison, which shall be imposed in addition and consecutive to the punishment prescribed for that felony." (Stats. 2000, ch. 287, § 23.) Because the post-2001 amendments of the statute do not alter our analysis, for clarity's sake we hereinafter refer to the current version of the statute.

[6] We take judicial notice of the legislative history of the statute, as requested by the People. (Evid. Code, § 452, subd. (c); *People v. Muszynski* (2002) 100 Cal.App.4th 672, 681, fn. 15 [122 Cal.Rptr.2d 764].)

*People v. Bland, supra,* 28 Cal.4th 313, is instructive. As noted above, *Bland* concluded that section 12022.53, subdivision (d), "does not require that the defendant fire a bullet that directly inflicts the harm. The enhancement applies so long as defendant's personal discharge of a firearm was a proximate, i.e., a substantial, factor contributing to the result." (*People v. Bland, supra,* at p. 338.) In *Bland,* the defendant and another man both fired shots at a vehicle occupied by three persons. One vehicle occupant was killed; the other two were injured. It was unclear whether the defendant or his accomplice actually fired the bullets that hit the surviving victims. (*Id.* at p. 318.) The defendant was convicted of first degree murder and two counts of attempted murder. The jury found true section 12022.53, subdivision (d) allegations on all three counts. (*Bland, supra,* at p. 318) On appeal, the section 12022.53 findings were reversed, because the trial court had failed to define proximate cause. (*Bland, supra,* at pp. 334–335.) The appellate court also held the enhancement could not be found true " 'unless defendant personally fired the bullets which struck the victim.' " (*Id.* at p. 335.)

■ The California Supreme Court disagreed with the Court of Appeal, reasoning as follows. "Section 12022.53(d) requires that the defendant 'intentionally and *personally* discharged a firearm' . . . but only that he 'proximately caused' the great bodily injury or death. The jury, properly instructed, reasonably found that defendant did personally discharge a firearm. The statute states nothing else that defendant must *personally* do. Proximately causing and personally inflicting harm are two different things." (*People v. Bland, supra,* 28 Cal.4th at p. 336.) Personally inflicting an injury means to directly cause an injury, not to proximately cause it. (*Id.* at p. 337.) "The Legislature is aware of the difference. When it wants to require personal infliction, it says so. [Citation.] When it wants to require something else, such as proximate causation, it says so, as in section 12022.53(d)." (*Id.* at p. 336.) *Bland* cited *People v. Cole* (1982) 31 Cal.3d 568, 571 [183 Cal.Rptr. 350, 645 P.2d 1182], for the "obvious" proposition that " 'an individual can and often does proximately cause injury without personally inflicting that injury.' " (*People v. Bland, supra,* 28 Cal.4th at p. 337.) The *Bland* defendant's discharge of his firearm may have been a proximate cause of the victims' injuries, even though it may have been his cohort's bullets that hit the victims. (*Id.* at pp. 337–338.)

■ In the instant case, of course, the victim's injury was not a gunshot wound, but a broken ankle suffered when he attempted to avoid being shot. Nevertheless, *Bland's* reasoning directly informs our analysis. *Bland* made clear that section 12022.53, subdivision (d) does *not* require the defendant *personally* inflict the injury. *Bland* teaches that, as long as the injury was proximately caused by the discharge of the firearm, the statute's requirements are met. Put differently, the defendant's discharge of a firearm may be the proximate cause of a victim's injury, even if the defendant's bullet does not

hit the victim. Applying that principle here, the statute does not require that the qualifying injuries are limited to bullet wounds.

Nothing in the statutory language or legislative history suggests a different conclusion. To the contrary, both support our analysis. The legislative purpose behind the statute is unambiguous: to impose " 'substantially longer prison sentences . . . on felons who use firearms in the commission of their crimes, in order to protect our citizens and to deter violent crime.' [Citation.]" (*People v. Garcia, supra,* 28 Cal.4th at p. 1172, quoting Stats. 1997, ch. 503, § 1; see *People v. Oates, supra,* 32 Cal.4th at p. 1057; *People v. Martinez, supra,* 76 Cal.App.4th at p. 493; *People v. Mason* (2002) 96 Cal.App.4th 1, 12 [115 Cal.Rptr.2d 359].) "In the case of subdivision (d) . . . the statute's purpose quite specifically is to deter persons from inflicting great bodily injury or death through the intentional discharge of firearms in the commission of such felonies . . . ." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1314 [109 Cal.Rptr.2d 643].) "The ease with which a victim of one of the enumerated felonies could be killed or injured if a firearm is involved clearly supports a legislative distinction treating firearm offenses more harshly than the same crimes committed by other means, in order to deter the use of firearms and save lives. [Citations.]" (*People v. Martinez, supra,* at pp. 497–498.)

The Legislative purpose to protect citizens from injury and deter violent crime would not be furthered if subdivision (d) was interpreted to encompass only bullet wounds. It is surely to be expected that persons attempting to dodge a bullet may react in panic with evasive maneuvers that are likely to cause injury to themselves or others. There appears to be no principled reason to distinguish the type of injury here—suffered when the victim took life-saving evasive action—from a direct hit by the bullet. Both are equally caused by the discharge of the firearm. In both instances, the defendant's culpability is the same. A defendant should not benefit simply because he or she is a bad shot, or because the victim is fortuitously able to move out of harm's way.

■ Moreover, the plain language of the statute supports our conclusion. Had the Legislature wished to limit section 12022.53, subdivision (d)'s reach to gunshot wounds only, it certainly could have said so. Instead, it used the phrase "great bodily injury," which on its face does not narrow the statute's reach to gunshot wounds. Further, the existence of the proximate cause requirement supports the conclusion that other injuries qualify to impose the enhancement. Had the Legislature intended the statute to encompass only gunshot wounds, the proximate cause requirement would have been unnecessary. If the victim is hit by the defendant's gunshot, the discharge would necessarily be the *actual* cause of the injury, and the proximate cause

requirement would be superfluous. " 'Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage. [Citation.]' [Citation.]" (*People v. Flores* (2005) 129 Cal.App.4th 174, 182 [28 Cal.Rptr.3d 232].) A proximate cause requirement would seem to be necessary in only two scenarios: first, in the *Bland* situation, where there is more than one shooter; and second, in the instant situation, where the bullet itself does not hit the victim, but the discharge of the firearm is nonetheless the proximate cause of the injury. We see no reason to assume the Legislature enacted the proximate cause language only to cover the concurrent shooter situation, as Palmer argues.

■ In sum, the plain language of the statute, as well as its underlying purpose, supports the conclusion that section 12022.53, subdivision (d) encompasses any injury, not just bullet wounds, when the defendant's discharge of a firearm was the proximate cause of the injury.

2. *The evidence was sufficient to support the jury's true findings on the section 12022.53, subdivision (d) enhancements.*

We next turn to the question of whether the evidence was sufficient to establish Palmer's gunshot was the proximate cause of Officer Burks's broken ankle. Palmer argues the evidence was insufficient, because Burks dove for cover when Palmer *pointed* the gun at Burks, not when Palmer actually *discharged* the gun. Again, we disagree.

■ When determining whether the evidence was sufficient to sustain a criminal conviction, we review the entire record in the light most favorable to the judgment to determine " 'whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496 [117 Cal.Rptr.2d 45, 40 P.3d 754]; see *People v. Carter* (2005) 36 Cal.4th 1215, 1257–1258 [32 Cal.Rptr.3d 838, 117 P.3d 544].) "We draw all reasonable inferences in support of the judgment. [Citation.]" (*People v. Wader* (1993) 5 Cal.4th 610, 640 [20 Cal.Rptr.2d 788, 854 P.2d 80].) Reversal is not warranted unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

Here, the evidence was sufficient to establish Burks's injury was the result of Palmer's discharge of the firearm, rather than a distinct act of pointing the gun. Burks testified that he received the dispatch informing him of the robbery; observed Palmer and radioed his observations to the dispatcher; and

activated his vehicle's lights. Palmer stopped his car. Burks put his patrol vehicle in park and exited, simultaneously unholstering his weapon. At the same time, Palmer exited his vehicle, swiveled around, and pointed the gun at Burks's chest. The gun was pointed at Burks "almost instantaneously" when Palmer swiveled out of the car. Burks dove for cover and saw the flash of the gun as he ducked behind the patrol vehicle's door. At the same time he felt pain in his ankle. The entire incident transpired quickly; *only a "second or two" elapsed from the time Burks activated his patrol vehicle's lights and the shooting.* There was no evidence that Palmer held Burks at bay by pointing the gun at him for a distinct period of time without firing. To the contrary, Burks's testimony, fairly read, suggests that Palmer's exit from the car, Burks's dive for cover, and the discharge of the firearm occurred almost simultaneously.

Palmer's argument rests upon the premise that the "discharge" of a firearm refers only to the instant the firearm's trigger is actually pulled. Palmer's interpretation of the statute is unduly crabbed. We see nothing in the statutory language that so limits the meaning of "discharge" as applied to the facts of this case, nor does Palmer cite any authority so limiting the term. The evidence recited above showed Palmer exited his vehicle and immediately turned, pointed the gun, and fired, all in one essentially seamless motion. The most reasonable interpretation of this evidence was that Palmer's conduct of pulling out and pointing the gun, and pulling the trigger, all constituted a single act of "discharging" the gun for purposes of the statute. This was not a case in which the defendant pointed a gun for some distinct and significant period of time without firing, impelling the victim to dive for cover merely in response to the *pointing* of the gun. Palmer's attempt to artificially compartmentalize the circumstances of the shooting is unpersuasive.

We do not disagree with Palmer that, had he pointed the gun at Burks for some significant length of time before firing it, and Burks's injury occurred during that period, before the gunshot, the proximate cause requirement would not be established. It is axiomatic that X cannot be a proximate cause of Y if Y has already occurred before X. As *People v. Bland* explained, "Even if the jurors did not know exactly what proximate causation means, no juror who is conversant in the English language would find that discharging a firearm proximately caused injuries that had already occurred." (*People v. Bland, supra,* 28 Cal.4th at p. 338.) However, on the evidence presented here, the jury could reasonably find that Palmer's conduct of exiting the car,

pointing the gun, and pulling the trigger constituted a single act of "discharging" the gun for purposes of the statute. Accordingly, the evidence was sufficient to support the jury's true finding on the section 12022.53, subdivision (d) enhancement.[7]

### 3. *CALJIC No. 17.19.5 adequately advised the jury of the relevant legal principles.*

The trial court instructed the jury with CALJIC No. 17.19.5, the standard instruction pertaining to the section 12022.53, subdivision (d) enhancement. As relevant here, that instruction stated: "It is alleged . . . that the defendant[s] intentionally and personally discharged a firearm [and [proximately] caused [great bodily injury] to a person] during the commission of the crime[s] charged. [¶] If you find the defendant[] . . . guilty of [one or more of] the crime[s] thus charged, you must determine whether the defendant[s] . . . intentionally and personally discharged a firearm [and [proximately] caused [great bodily injury] to a person] [other than an accomplice] in the commission of [that] [those] [felony] [felonies]. [¶] . . . [¶] The term 'intentionally and personally discharged a firearm,' as used in this instruction, means that the defendant [himself] [herself] must have intentionally discharged it. [¶] . . . [¶] [A [proximate] cause of [great bodily injury] is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the [great bodily injury] and without which the [great bodily injury] would not have occurred.]" (CALJIC No. 17.19.5.)

---

[7] In arguing for an alternative interpretation of section 12022.53, subdivision (d), Palmer invokes the "rule of lenity," which compels a court to resolve true statutory ambiguities in a defendant's favor. (*People v. Oates, supra,* 32 Cal.4th at pp. 1068–1069; *People v. Lee* (2003) 31 Cal.4th 613, 627 [3 Cal.Rptr.3d 402, 74 P.3d 176].) However, "that rule applies 'only if two reasonable interpretations of the statute stand in relative equipoise.' [Citation.]" (*People v. Oates, supra,* at p. 1068; *People v. Lee, supra,* at p. 627.) Because, as we have explained, the statutory language is clear and Palmer's interpretation is not equally reasonable, the rule of lenity is inapplicable.

Second, Palmer argues that under our interpretation of the statute, he lacked fair notice of what conduct was covered by section 12022.53, subdivision (d), in violation of his due process rights. " 'Due process requires fair notice of what conduct is prohibited. A statute must be definite enough to provide a standard of conduct for its citizens and guidance for the police to avoid arbitrary and discriminatory enforcement. [Citations.]' " (*People v. Tapia, supra,* 129 Cal.App.4th at p. 1166.) We see no due process problem. A statute will not be held void for vagueness if any reasonable and practical construction can be given its language. (*Id.* at p. 1167.) As we have discussed, our interpretation of section 12022.53, subdivision (d) flows from the statute's plain language and the obvious legislative purposes underlying it. The plain language of the statute was sufficient to put Palmer on notice that his conduct of shooting at Officer Burks, under the circumstances here, fell within section 12022.53, subdivision (d)'s ambit.

■ CALJIC No. 17.19.5 directly tracks the language of section 12022.53, subdivision (d), which provides for the enhancement when the defendant "personally and intentionally discharges a firearm *and* proximately causes great bodily injury . . . ." (Italics added.) In the absence of a request for amplification, the language of a statute defining a crime is usually an appropriate and desirable basis for an instruction, as long as the jury would not have difficulty understanding the statute. (*People v. Roldan* (2005) 35 Cal.4th 646, 740 [27 Cal.Rptr.3d 360, 110 P.3d 289]; *People v. Bland, supra,* 28 Cal.4th at p. 334; *People v. Rodriguez* (2002) 28 Cal.4th 543, 546 [122 Cal.Rptr.2d 348, 49 P.3d 1085].) " '[I]f the instruction as given is adequate, the trial court is under no obligation to amplify or explain in the absence of a request that it do so.' [Citation.]" (*People v. Roldan, supra,* at p. 740.) ■ Moreover, our Supreme Court has held that CALJIC No. 17.19.5 "does correctly define proximate causation." (*People v. Bland, supra,* at p. 336.)

■ Because CALJIC No. 17.19.5 was an accurate statement of the law, we agree with the People that Palmer's claim is waived. It is of course true that a defendant need not object to preserve a challenge to an instruction that incorrectly states the law and affects his or her substantial rights. (§ 1259; *People v. Hillhouse, supra,* 27 Cal.4th at pp. 505–506; *People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7 [86 Cal.Rptr.2d 243, 978 P.2d 1171].) On the other hand, " 'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' [Citation.]" (*People v. Guiuan* (1998) 18 Cal.4th 558, 570 [76 Cal.Rptr.2d 239, 957 P.2d 928]; see *People v. Spurlock* (2003) 114 Cal.App.4th 1122, 1130 [8 Cal.Rptr.3d 372].) However, because Palmer argues that his trial counsel was ineffective for failing to object to the instruction or request a clarifying instruction, we address his claim.

Palmer argues that CALJIC No. 17.19.5 is flawed because it "failed to advise the jury that the injury suffered [by] Burks had to be proximately caused by the discharge of a firearm and not just proximately caused by appellant's actions." He complains that the instruction "presents two seemingly independent elements: (a) the defendant discharges a firearm; and (b) the defendant proximately causes great bodily injury."

■ When reviewing a purportedly ambiguous jury instruction, we ask whether there is a reasonable likelihood the jury misconstrued or misapplied the challenged instruction. (*People v. Harrison* (2005) 35 Cal.4th 208, 251–252 [25 Cal.Rptr.3d 224]; *People v. Smithey, supra,* 20 Cal.4th at p. 963; *People v. Welch* (1999) 20 Cal.4th 701, 766 [85 Cal.Rptr.2d 203, 976 P.2d 754]; *People v. Clair* (1992) 2 Cal.4th 629, 663 [7 Cal.Rptr.2d 564, 828 P.2d 705].)

Our Supreme Court has already determined in *People v. Bland, supra,* 28 Cal.4th at pages 335 to 336, that CALJIC No. 17.19.5 correctly defines proximate cause. We are, of course, obligated to follow *Bland.* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

In any event, we do not believe reasonable jurors would have interpreted the instruction as Palmer suggests. In essence, Palmer's argument is that the instruction's use of the conjunctive "and"—which tracked the statutory language—would have mislead the jury into considering the issue of proximate causation separately from the issue of discharge of the firearm. While such an interpretation might be possible if the instruction was viewed entirely out of context, we do not believe it is likely. The instruction was obviously addressed to, and linked, the issues of Palmer's discharge of the firearm and Burks's injury. The instruction's language—"you must determine whether the defendant . . . intentionally and personally discharged a firearm and proximately caused great bodily injury to a person"—clearly tied the two elements together. Reasonable jurors would not have assumed the single word "and" meant the discharge and proximate cause issues were divorced from each other. To the contrary, the most natural and commonsense reading of CALJIC No. 17.19.5 is that the discharge of the firearm must be the proximate cause of the injury. There is no reasonable likelihood the jury would have construed the instruction to suggest a true finding was warranted if the great bodily injury was caused by something other than Palmer's personal and intentional discharge of a firearm.

Moreover, on the facts of this case, the purported instructional error was harmless under any standard. (See, e.g., *Neder v. United States* (1999) 527 U.S. 1, 15–16 [144 L.Ed.2d 35, 119 S.Ct. 1827] [use of an instruction that omits an element of an offense does not require reversal if the error is harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]]; *People v. Flood* (1998) 18 Cal.4th 470, 487, 490 [76 Cal.Rptr.2d 180, 957 P.2d 869] [misdirection of the jury, including incorrect, ambiguous, conflicting, or wrongly omitted instructions that do not amount to federal constitutional error, are reviewed under the harmless error standard articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]].) As we have explained, the evidence overwhelmingly suggested the discharge of the gun *was* the cause of the injury. Additionally, the prosecutor's argument reinforced the concept that the discharge of the firearm had to have proximately caused the injury.[8] (Cf. *People v. Majors*

---

[8] The prosecutor urged during argument, "the court read to you about causation, if it would not have happened but for the defendant shooting at the officer, then he caused it. Okay. . . . [¶] . . . [¶] What about Officer Burks, here. He's being shot at. [¶] Is it foreseeable that a man would try and get out of the way? [¶] Of course it is. [¶] But, more importantly, did it happen

(1998) 18 Cal.4th 385, 410 [75 Cal.Rptr.2d 684, 956 P.2d 1137].) Therefore, even if the instruction had been modified as Palmer suggests, it is clear beyond a reasonable doubt that the jury would not have rendered a more favorable verdict for Palmer.

 4. *Trial counsel was not ineffective for failing to argue the absence of proximate cause.*

In a third related argument, Palmer urges that his trial counsel was ineffective for failing to advance the theory that the gunshot was not the proximate cause of Burks's broken ankle, both by failing to argue in closing that there was no evidence the discharge proximately caused the injury, and by failing to object to or request modification of CALJIC No. 17.19.5. We disagree.

■■■ "In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations.]" (*People v. Carter* (2003) 30 Cal.4th 1166, 1211 [135 Cal.Rptr.2d 553, 70 P.3d 981]; see *Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 104 S.Ct. 2052].) If the defendant makes an insufficient showing on either component, the claim must fail. (*People v. Holt* (1997) 15 Cal.4th 619, 703 [63 Cal.Rptr.2d 782, 937 P.2d 213].) "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.] Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus." (*People v. Carter, supra,* at p. 1211; see *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267 [62 Cal.Rptr.2d 437, 933 P.2d 1134].) "A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Carter, supra,* at p. 1211.)

Palmer has not met this burden. He has not shown that defense counsel was asked for an explanation but failed to provide one. The record before us does not suggest counsel's performance was obviously inadequate, or that there could be no satisfactory explanation for his failure to argue the theory

---

because of being shot at? [¶] Of course it did. [¶] When he raised that gun and shot at him, Officer Burks had a very fraction of a second to react. [¶] But he broke his own leg. All right. He broke his own leg. [¶] The question you have is would that have happened if the defendant had not been shooting at him?"

proposed on appeal. To the contrary, counsel could have made a legitimate tactical choice not to argue that Burks dove for cover in response to the gun being pointed at him, rather than its discharge. Counsel could reasonably have concluded the argument was too hypertechnical to appeal to a jury of laypersons. Counsel may also have concluded, as we have set forth above, that Palmer's actions of turning, pointing, and shooting the gun occurred as one seamless event, making the evidentiary basis for the proposed argument questionable at best. Counsel may have wished to concentrate on the argument he viewed as more persuasive—mistaken identity—rather than potentially confusing the issues and detracting from his credibility with the jury by making a nonpersuasive argument. (See *People v. Thomas* (1992) 2 Cal.4th 489, 531–532 [7 Cal.Rptr.2d 199, 828 P.2d 101] [failure to argue an alternative theory is not objectively unreasonable].) Accordingly, Palmer's ineffective assistance claim lacks merit.

[[B.–F.]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied November 28, 2005, and appellant's petition for review by the Supreme Court was denied February 22, 2006, S139624.

---

*See footnote, *ante*, page 1141.