[No. C047726. Third Dist. May 15, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
SERGIO ZARAZUA et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I–X and XII–XIII.

**COUNSEL**

Madeline McDowell, under appointment by the Court of Appeal, for Defendant and Appellant Sergio Zarazua.

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant Carlos Zarazua.

Heather J. MacKay, under appointment by the Court of Appeal, for Defendant and Appellant Jorge Ramirez.

Edmund G. Brown, Jr., and Bill Lockyer, Attorneys General, Dane R. Gillette and Mary Jo Graves, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon, Paul E. O'Connor and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NICHOLSON, Acting P. J.**—Three-year-old Rocky Douangmala was killed in a traffic collision. The car in which he was riding was hit by a car carrying two members of the Norteños gang, who were fleeing because of gunfire from another car carrying three members of the Sureños gang. Defendants Sergio Zarazua, Carlos Zarazua, and Jorge Ramirez, the Sureños gang members, were convicted of various counts associated with the gunfire and Rocky's death.[1]

Carlos, who was tried by a separate jury, was convicted of two counts of attempted murder and one count each of shooting at an occupied vehicle and permitting discharge of a firearm from a vehicle that he was driving. The jury found true several firearm and gang-related enhancement allegations. Sentenced to a state prison term of 15 years to life, Carlos appeals. We conclude his contentions are without merit except that one of the enhancements found true by the jury with respect to convictions for shooting at an occupied vehicle and permitting discharge of a firearm from a vehicle that he was driving is not applicable to convictions for those crimes. We therefore order them stricken and affirm the judgment as modified. The striking of the enhancements does not affect the sentence.

Sergio and Jorge were tried at the same time and in the same courtroom as Carlos but by a different jury. The jury convicted them of one count each of second degree murder and shooting at an occupied vehicle and two counts of attempted voluntary manslaughter, as well as firearm and gang-related enhancements. The court sentenced Sergio and Jorge to 22 years eight months, plus 40 years to life in state prison. We conclude that the second degree murder and attempted voluntary manslaughter convictions must be reversed and remanded for retrial because of instructional error. Otherwise, we affirm the judgment, including the conviction for shooting at an occupied vehicle.

In the published portion of this opinion, we consider an issue raised by Sergio and Jorge. They contend that the evidence was insufficient to sustain the enhancement allegation that their personal and intentional discharge of firearms proximately caused Rocky's death. (See Pen. Code, § 12022.53, subd. (d).) We conclude that evidence was sufficient because the collision that caused Rocky's death was a foreseeable consequence of their discharge of the firearms.

---

[1] Because two of them share a surname (they are brothers), we refer to defendants by their first names, for clarity.

## FACTS

Emilio Osorio and Julio Covington, cousins and members of the Norteños gang, went to the ampm store on the corner of Jessie Avenue and Norwood Avenue in Sacramento in the red Pontiac Firebird that Covington was driving. Neither of them was armed. Covington parked in front of the store and went into the store while Osorio waited in the car.

Inside the store, Covington saw Sergio, whom he recognized as a Sureño, based on his clothing. He was wearing a shirt with the number 13 on it. Covington left the store and drove the Pontiac over by the gasoline pumps. Carlos was standing near one of the pumps, next to a blue Toyota. Covington yelled "Norte" at Carlos, which, to a rival gang member, is a challenge. Covington also called Carlos a "scrapa," a name a Norteños gang member calls a Sureños gang member, intended as an insult. In response, Carlos yelled, "Fuck you." Angry, Covington pulled out of the station and onto Jessie Avenue. He drove slowly through the neighborhood looking for someone he knew.

Covington stopped at a stop sign on Naruth Way at the intersection with Jessie Avenue, less than a half-mile from the ampm store and about a block from Rio Linda Boulevard. The Toyota from the ampm store, with Carlos driving and Sergio and Jorge as passengers, left the ampm store and, traveling on Jessie Avenue, approached the intersection of Naruth Way and Jessie Avenue just after the Pontiac, traveling on Naruth Way, arrived at the same intersection. The Toyota skidded to a stop about 40 feet away from the Pontiac. Sergio and Jorge each leaned out of the Toyota and fired handguns at the Pontiac.

Reacting to the gunshots, Covington told Osorio to get down and first accidentally put the Pontiac in neutral but then into drive. He burned rubber, then drove away from the Toyota down Jessie Avenue, gaining speed rapidly, and, despite a stop sign, entered Rio Linda Boulevard going about 45 miles per hour. At the same time, a Honda Accord driven by Khamla Douangmala was passing through the same intersection on Rio Linda Boulevard, going about 35 miles per hour. Douangmala's uncle, Chan Douangdara, was riding in the front passenger seat, and Douangmala's three-year-old son, Rocky, was riding in the backseat on the passenger side.

The Pontiac hit the Honda, propelling it into some poles. Douangmala and his uncle were both knocked unconscious but later recovered. Rocky, however, died as a result of the impact.

Lynn Reed had been waiting at the stop sign when the Pontiac passed him and collided with the Honda. Reed was driving a sport utility vehicle and

pulling a boat. After the collision, Covington and Osorio left the Pontiac and ran toward Reed, who had pulled over onto Rio Linda Boulevard. Osorio jumped into the boat. Covington attempted to force his way into Reed's vehicle through the driver's door and clung to the vehicle, expressing fear that someone was shooting at him. After Reed drove slowly down Rio Linda Boulevard, about a block, Covington and Osorio jumped off and fled the scene.

Sacramento Police Department investigators found a .25-caliber automatic shell casing at the corner of Jessie Avenue and Naruth Way. The red Pontiac had a bullet hole in the right rear quarter panel and another through the rear taillamp. Other holes were caused either by bullets or by a dent puller, a tool used to repair dents in a car.

About one month after the incident, police searched a residence occupied by Carlos and Sergio and their parents. The blue Toyota was parked in front of the residence. The officers found indicia of gang membership relating to both Carlos and Sergio.

Each of the defendants was interviewed by police.[2]

Carlos, 19 years old at the time, recounted Covington's challenge to him at the ampm store and their pursuit of the Pontiac. Both Sergio and Jorge had handguns, Jorge's a .25-millimeter, and fired at the Pontiac.

Jorge, 16 years old at the time, stated that, while he and Sergio were in the ampm store, they realized that someone was talking to Carlos, out by the gasoline pumps. They hurried out and joined Carlos in the Toyota to chase the Pontiac. Jorge claimed that the passenger in the Pontiac pointed a gun at them and that Sergio was the only one who fired. He admitted associating with Sureños gang members. Later, he admitted that he fired one round at the Pontiac.

Sergio, 15 years old at the time, stated that he and Jorge were Sureños gang members, but Carlos was not. He claimed that the occupants of the other car were shooting into the air, but he later retracted that statement and claimed he said it because Jorge had told him to. Both Sergio and Jorge fired at the Pontiac.

Other evidence will be recounted as it becomes relevant to the issues discussed.

---

[2] As discussed below, two juries tried the three defendants. Only the jury considering Carlos's guilt heard the recording of Carlos's interview. And only the jury considering the guilt of Sergio and Jorge heard the recordings of their interviews.

## PROCEDURE

The district attorney filed a "third amended consolidated information" alleging counts of murder, attempted murder, shooting at an occupied vehicle, and permitting another to discharge a firearm from a vehicle, with associated special circumstances and enhancements. All three defendants pled not guilty to all counts, and Carlos included a plea of not guilty by reason of insanity. The case was tried before two juries—one for Sergio and Jorge (the "green" jury) and a separate jury for Carlos (the "gold" jury, but also referred to in the record as the "yellow" jury).

The green jury found Jorge and Sergio guilty of second degree murder, attempted voluntary manslaughter (two counts), and shooting at an occupied vehicle. The gold jury found Carlos guilty of attempted murder (two counts), shooting at an occupied vehicle, and permitting discharge of a firearm from a vehicle that he was driving.

The following outline details the jury's verdicts and its findings concerning the associated enhancement allegations:

### 1. *Jorge Ramirez*

A. The jury found Jorge guilty of second degree murder of Rocky Douangmala as a lesser included offense of first degree murder (Pen. Code, §§ 187, 189; count one),[3] with the following findings:

i. Jorge was armed with a firearm (§ 12022, subd. (a)(1));

ii. Jorge used a firearm (§ 12022.5, subd. (a));

iii. Jorge personally used a firearm (§ 12022.53, subds. (b), (e)(1));

iv. Jorge personally discharged a firearm (§ 12022.53, subds. (c), (e)(1));

v. Jorge personally discharged a firearm proximately causing great bodily injury and death to Rocky Douangmala (§ 12022.53, subds. (d), (e)(1)); and

vi. the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

B. The jury found Jorge guilty of attempted voluntary manslaughter of Emilio Osorio as a lesser offense of attempted murder (§§ 192, 664; count two), with the following findings:

---

[3] Hereafter, unspecified code citations are to the Penal Code.

i. Jorge was armed with a firearm (§ 12022, subd. (a)(1));

ii. Jorge used a firearm (§ 12022.5, subd. (a)); and

iii. the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

C. The jury found Jorge guilty of attempted voluntary manslaughter of Julio Covington as a lesser offense of attempted murder (§§ 192, 664; count three), with the following findings:

i. Jorge was armed with a firearm (§ 12022, subd. (a)(1));

ii. Jorge used a firearm (§ 12022.5, subd. (a)); and

iii. the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

D. The jury found Jorge guilty of shooting at an occupied vehicle (§ 246; count four), with the following findings:

i. Jorge was armed with a firearm (§ 12022, subd. (a)(1));

ii. Jorge used a firearm (§ 12022.5, subd. (a));

iii. Jorge personally used a firearm (§ 12022.53, subds. (b), (e)(1));

iv. Jorge personally discharged a firearm (§ 12022.53, subds. (c), (e)(1));

v. Jorge personally discharged a firearm proximately causing great bodily injury and death to Rocky Douangmala (§ 12022.53, subds. (d), (e)(1)); and

vi. the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

2. *Sergio Zarazua*

A. The jury found Sergio guilty of second degree murder of Rocky Douangmala as a lesser included offense of first degree murder (§§ 187, 189; count one), with the following findings:

i. Sergio was armed with a firearm (§ 12022, subd. (a)(1));

ii. Sergio used a firearm (§ 12022.5, subd. (a));

iii. Sergio personally used a firearm (§ 12022.53, subds. (b), (e)(1));

iv. Sergio personally discharged a firearm (§ 12022.53, subds. (c), (e)(1));

v. Sergio personally discharged a firearm proximately causing great bodily injury and death to Rocky Douangmala (§ 12022.53, subds. (d), (e)(1)); and

vi. the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

B. The jury found Sergio guilty of attempted voluntary manslaughter of Emilio Osorio as a lesser offense of attempted murder (§§ 192, 664; count two), with the following findings:

i. Sergio was armed with a firearm (§ 12022, subd. (a)(1));

ii. Sergio used a firearm (§ 12022.5, subd. (a)); and

iii. the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

C. The jury found Sergio guilty of attempted voluntary manslaughter of Julio Covington as a lesser offense of attempted murder (§§ 192, 664; count three), with the following findings:

i. Sergio was armed with a firearm (§ 12022, subd. (a)(1));

ii. Sergio used a firearm (§ 12022.5, subd. (a)); and

iii. the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

D. The jury found Sergio guilty of shooting at an occupied vehicle (§ 246; count four), with the following findings:

i. Sergio was armed with a firearm (§ 12022, subd. (a)(1));

ii. Sergio used a firearm (§ 12022.5, subd. (a));

iii. Sergio personally used a firearm (§ 12022.53, subds. (b), (e)(1));

iv. Sergio personally discharged a firearm (§ 12022.53, subds. (c), (e)(1));

v. Sergio personally discharged a firearm proximately causing great bodily injury and death to Rocky Douangmala (§ 12022.53, subds. (d), (e)(1)); and

vi. the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

### 3. *Carlos Zarazua*

A. The jury found Carlos not guilty of first degree murder and was unable to reach a verdict with respect to the lesser included offense of second degree murder.

B. The jury found Carlos guilty of attempted murder of Emilio Osorio (§§ 187, subd. (a), 664; count two), with the following findings:

i. Carlos *did not* commit the attempted murder willfully, deliberately, and with premeditation;

ii. Carlos *was not* armed with a firearm;

iii. a principal personally used a firearm (§ 12022.53, subds. (b), (e)(1));

iv. a principal personally discharged a firearm (§ 12022.53, subds. (c), (e)(1));

v. the jury made *no finding* concerning whether a principal discharged a firearm proximately causing great bodily injury and death to Rocky Douangmala; and

vi. the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

C. The jury found Carlos guilty of attempted murder of Julio Covington (§§ 187, subd. (a), 664; count three), with the following findings:

i. Carlos *did not* commit the attempted murder willfully, deliberately, and with premeditation;

ii. Carlos *was not* armed with a firearm;

iii. a principal personally used a firearm (§ 12022.53, subds. (b), (e)(1));

iv. a principal personally discharged a firearm (§ 12022.53, subds. (c), (e)(1));

v. the jury made *no finding* concerning whether a principal discharged a firearm proximately causing great bodily injury and death to Rocky Douangmala; and

vi. the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

D. The jury found Carlos guilty of shooting at an occupied vehicle (§ 246; count four), with the following findings:

i. Carlos *was not* armed with a firearm;

ii. a principal personally used a firearm (§ 12022.53, subds. (b), (e)(1));

iii. a principal personally discharged a firearm (§ 12022.53, subds. (c), (e)(1));

iv. the jury made *no finding* concerning whether a principal discharged a firearm proximately causing great bodily injury and death to Rocky Douangmala; and

v. the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

E. The jury found Carlos guilty of permitting discharge of a firearm from a vehicle that he was driving (§ 12034, subd. (b); count five), with the following findings:

i. Carlos *was not* armed with a firearm;

ii. a principal personally used a firearm (§ 12022.53, subds. (b), (e)(1));

iii. a principal personally discharged a firearm (§ 12022.53, subds. (c), (e)(1));

iv. the jury made *no finding* concerning whether a principal discharged a firearm proximately causing great bodily injury and death to Rocky Douangmala; and

v. the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

After a trial on Carlos's sanity, the jury returned verdicts finding he was sane when he committed the crimes. Also with respect to Carlos, the court

declared a mistrial as to second degree murder and the allegations that a principal discharged a firearm proximately causing great bodily injury and death to Rocky Douangmala. Later, the court dismissed that count and those allegations.

The trial court sentenced Jorge and Sergio, identically, to a total determinate term of 22 years eight months and a concurrent indeterminate term of 40 years to life in state prison. The court sentenced Carlos to an indeterminate term of 15 years to life in state prison.[4]

## DISCUSSION

## I–X[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## XI

*Personal Discharge Enhancements*

*(Sergio and Jorge)*

Sergio and Jorge contend that the enhancements pursuant to section 12022.53, subdivision (d) attached to counts one (murder) and four (shooting at an occupied vehicle) must be reversed because there was insufficient evidence to conclude that their shooting at Covington and Osorio caused Rocky's death. We conclude the evidence was sufficient.[18]

■ "Section 12022.53, also known as the '10-20-life' law (Assem. Bill No. 4 (1997–1998 Reg. Sess.)), was enacted in 1997 to substantially increase the penalties for using firearms in the commission of enumerated felonies . . . . [Citations.] The statute prescribes sentence enhancements (prison terms of 10 years, 20 years, and 25 years to life) for increasingly serious circumstances of firearm use. [Citations.] . . . Subdivision (d), the provision at issue here, requires imposition of an additional, consecutive 25-years-to-life term when the defendant 'personally and intentionally discharges a firearm

---

[4] Because defendants do not raise issues concerning the computation of their sentences, we need not recount the details.

[*] See footnote, *ante*, page 1348.

[18] Although we must reverse the second degree murder convictions (count one), we conclude the evidence was sufficient to support the enhancements pursuant to section 12022.53, subdivision (d), which, therefore, may be retried along with the murder count. As to count four, which we do not reverse, no retrial on this enhancement is necessary.

and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice . . . .' [Citations.]" (*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1148–1150 [35 Cal.Rptr.3d 373].) Subdivision (d) of section 12022.53 specifically applies to both murder and shooting at an occupied vehicle.

Sergio and Jorge assert that subdivision (d) of section 12022.53 is not applicable to this case because (A) the statute was intended to apply only to death by bullet or gunshot[19] and (B) their personal discharge of firearms did not proximately cause Rocky's death. Neither assertion is persuasive.

### A. *Death by Bullet or Gunshot*

Defendants base their argument that subdivision (d) of section 12022.53 was intended to apply only to death by bullet or gunshot on (1) the language of the statute, (2) the legislative history associated with the statute, and (3) a survey of published cases.

#### 1. *Language of the Statute*

■ Contrary to defendants' suggestion, the language of the statute does not support their view that the statute applies only to death by bullet or gunshot. The statute applies, by its terms, to personal and intentional discharge of a firearm which "proximately causes . . . death." (§ 12022.53, subd. (d).) The Legislature could have, but did not, state that the statute applies when a defendant shoots someone, causing that person's death. Instead, the statute is worded much more broadly, setting up proximate cause as the required nexus between the personal discharge and the death. (*People v. Bland* (2002) 28 Cal.4th 313, 337 [121 Cal.Rptr.2d 546, 48 P.3d 1107].)

■ The holding in *Palmer* supports this broader definition of criminal liability. In *Palmer*, a police officer broke his ankle diving out of the way as the defendant shot at him. The court held that "a defendant can proximately cause injury by discharging a firearm within the meaning of section 12022.53, subdivision (d) *even if his or her bullet does not actually strike the victim.*" (*People v. Palmer, supra*, 133 Cal.App.4th at p. 1150, original italics.) "[S]ection 12022.53[, subdivision] (d) does not require that the defendant fire a bullet that directly inflicts the harm." (*People v. Bland, supra*, 28 Cal.4th at p. 338.) Accordingly, we reject defendants' assertion that the language of the statute precludes its application to the facts of this case.

---

[19] While section 12022.53, subdivision (d) also includes great bodily injury, we limit our discussion to death proximately caused by personal and intentional discharge of a firearm because Rocky died.

## 2. *Legislative History*

The legislative history argument is likewise unavailing. Defendants assert generally, without directing us to any specific components, that the analyses of the bill enacting section 12022.53 in 1997 and the language of the bill amending that section in 1998 show that the Legislature intended that the discharge of the firearm must, in defendants' words, "directly cause the death" in order to impose the enhancement. It is unnecessary to quote all of the analyses and bills because nowhere in those analyses and bills does the Legislature exhibit an intent to limit the broad language of the statute, discussed above.

## 3. *Published Cases*

Defendants argue: "A survey of the published case law reveals that section 12022.53, subdivision (d) has *almost universally* been applied only in cases where the death or injury was directly caused by a gunshot." (Italics added.) This argument fails because it admits that there is no universal application only to death by gunshot. As defendants discuss in their argument, *Palmer* held that the bullet need not hit the victim. (*People v. Palmer, supra*, 133 Cal.App.4th at p. 1150.) That there are some cases, applying section 12022.53, subdivision (d), in which the victim was shot by the defendant does nothing in logic or reason to prove that the subdivision can be applied only in such cases. We therefore move on to the argument that defendants' discharge of the firearms did not proximately cause Rocky's death.

## B. *Proximate Causation*

Defendants contend that there was an insufficient nexus between their personal discharges of firearms and Rocky's death to find that the discharges proximately caused the death. We conclude that the nexus was sufficient under the facts of this case.

■ Using CALJIC No. 17.19.5, which correctly defines proximate causation for the purpose of applying section 12022.53, subdivision (d) (*People v. Bland, supra*, 28 Cal.4th at p. 336), the court instructed the jury: "A proximate cause of great bodily injury or death is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the great bodily injury or death and without which the great bodily injury or death would not have occurred."

■ "An intervening, superseding cause can relieve a defendant of criminal liability if the act 'break[s] the chain of causation' (*People v. Wattier* (1996) 51 Cal.App.4th 948, 953 [59 Cal.Rptr.2d 483]) and the defendant's act

is no longer a substantial factor in producing the injury." (*People v. Burnett* (2003) 110 Cal.App.4th 868, 877 [2 Cal.Rptr.3d 120].) In *Burnett*, the defendant grabbed a dog from its owner's lap and threw it into the street. Dazed and confused, the dog wandered into the path of a minivan and was killed. (*Id.* at p. 870.) The *Burnett* court determined that, even though the dog wandered into the path of the minivan, the dog's actions and the passing of the minivan were not superseding factors and the defendant was criminally liable for the dog's death because it was foreseeable that a vehicle would pass by while the dog was in the street. "The natural consequence of defendant's throwing [the dog] onto a dark, heavily traveled road was death from the wheels of a passing vehicle." (*Id.* at p. 875.)

██ Here, the accident that was the immediate cause of Rocky's death was a foreseeable result—a direct, natural and probable consequence—of defendants' discharges of their firearms. They shot at the vehicle occupied by Covington and Osorio. Using the most obvious means of escape available, Covington accelerated rapidly and, still within the zone of danger from defendants' shots, entered Rio Linda Boulevard without stopping or observing whether traffic was approaching. Even after the accident, Covington believed he was in danger of being shot. The victims' flight without regard for traffic laws is as predictable when someone shoots at an occupied vehicle as is a stampede for the door when someone yells "fire" in a crowded theater. Therefore, defendants' personal discharges of their firearms proximately caused Rocky's death, and the enhancement pursuant to section 12022.53, subdivision (d), subjecting defendants to a consecutive sentence of 25 years to life was supported by substantial evidence.[20]

### XII, XIII[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

As to defendant Carlos Zarazua, the judgment is modified to strike the true findings of section 12022.53 enhancements as to counts four and five. As modified, the judgment is affirmed.

As to defendants Sergio Zarazua and Jorge Ramirez, the convictions for second degree murder (count one) and attempted voluntary manslaughter

---

[20] In his reply brief and at oral argument, Jorge claimed that Covington's conviction for vehicular manslaughter was inconsistent with a finding in this case that the shooting by Sergio and Jorge proximately caused Rocky's death. What may or may not be an inconsistent verdict in a different case, however, has no relevance to whether the verdict is supported by substantial evidence in this case. (See *People v. Avila* (2006) 38 Cal.4th 491, 600 [43 Cal.Rptr.3d 1, 133 P.3d 1076] [inconsistent verdicts not cause for reversal].)

[*] See footnote, *ante*, page 1348.

(counts two and three) are reversed and remanded for retrial and resentencing. In all other respects, the judgment is affirmed.

Raye, J., and Butz, J., concurred.

Petitions for a rehearing were denied June 10, 2008, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied August 20, 2008, S164335.