Filed 7/25/13  P. v. Rodriguez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br> v.<br><br> FABIAN JAVON RODRIGUEZ,<br><br>  Defendant and Appellant. | B240769<br><br> (Los Angeles County<br> Super. Ct. No. YA079000) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lauren Weis Birnstein and Victor L. Wright, Judges.  Affirmed.

Edward J. Horowitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Chung L. Mar and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Before trial, defendant and appellant Fabian Javon Rodriguez moved to suppress evidence of a gun and ammunition. The trial court denied the motion, and a jury found defendant guilty of corporal injury on a cohabitant and of possession of a firearm by a felon. On appeal, he contends that the trial court erred by denying the suppression motion and, also, by denying his *Romero*[1] motion. We reject both contentions and affirm the judgment.

# FACTUAL AND PROCEDURAL BACKBROUND

## I. Factual background.[2]

In August 2010, Valerie Nunez was living with defendant, and she was pregnant with their child. Sometime that month, Nunez's mother, Renee Baca, saw bruising under Nunez's eyes. Baca later noticed that Nunez had bloodshot eyes and finger marks on her neck. At first, Nunez wouldn't tell her mother what happened, but she finally told Baca that defendant was responsible for her injuries.[3]

About two weeks later, on August 28, 2010, defendant drove to Baca's house. Nunez went outside to talk to him. Nunez testified that she got into the car and they went for a drive. Although she told a police officer that defendant locked the door and pulled out a gun when she got into the car and said she wasn't going anywhere, she was lying.[4] When she tried to unlock the door, defendant pulled her arm, leaving a red mark.

---

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

[2] Because a lengthy review of the facts is unnecessary to the issues on appeal, we state them in brief.

[3] City of Inglewood Police Officer Benjamin Sanza testified that Nunez said she didn't report this abuse because defendant threatened to harm her and her family if she told.

[4] Gail Pincus, executive director of the Domestic Abuse Center, testified about battered women's syndrome.

Defendant returned Nunez home on September 1, 2010. Baca called 911 and reported that defendant had kidnapped her daughter and brought her back. He was violent and had abused Nunez, and he had a loaded gun under the hood of his car.

Officer Sanza responded to the 911 call. Nunez told Sanza that defendant had come to the house on August 28, 2010 and convinced her to get into the car. When she did, he pointed a gun at her and grabbed her arm when she tried to open the door. She asked him to let her out, but he told her he was " 'kidnapping' " her. Continuing to point the gun at her stomach, defendant drove away. The next day, August 29, 2010, defendant took Nunez to a fast food restaurant and told her that if she tried to escape he would kill her and anyone in the area. While Nunez was with defendant, he accused her of cheating on him and held a gun to her forehead. When she tried to move, defendant put a pillow over her face and pressed the gun against the pillow. Defendant took Nunez to her mother's house on September 1 to get some of her belongings.

## II.      Procedural background.

An amended information filed on December 15, 2011 alleged: count 1, corporal injury to cohabitant (Pen. Code, § 273.5, subd. (a));[5] count 2, kidnapping (§ 207, subd. (a)); counts 3 and 5, assault with a semiautomatic firearm (§ 245, subd. (b)); count 4, criminal threats (§ 422); and count 6, possession of a firearm by a felon (former § 12021, subd. (a)(1)).

On January 19, 2012, a jury found defendant guilty of count 1, corporal injury to a cohabitant (§ 273.5, subd. (a)) and of count 6, possession of a firearm by a felon (former § 12021, subd. (a)(1)). The jury acquitted defendant of all other counts, including lesser included offenses.

After denying defendant's *Romero* motion, the trial court, on April 12, 2012, sentenced defendant, on count 1, to the high term of four years, doubled to eight years, plus a consecutive one-year term under section 667.5, subdivision (b). The court

---

[5]      All further undesignated statutory references are to the Penal Code.

sentenced him to a consecutive 16 months[6] on count 6. His total sentence therefore was 10 years 4 months.

## DISCUSSION

**I.     The search and seizure did not violate the Fourth Amendment.**

A warrantless search of defendant's car revealed a gun and ammunition. Defendant contends that this evidence should have been suppressed, having resulted from an illegal search, and therefore the judgment on count 6, felon in possession of a firearm should be reversed. We disagree.

A.     *Additional facts relevant to the search and seizure.*

Before trial, Rodriguez moved to suppress the gun and ammunition found after the warrantless search of his car.[7] At the hearing on the motion, the 911 dispatcher, Lavonia Lampkin, and Officer Daniel Ragazzo testified.

Lampkin received a 911 call on September 1, 2010.[8] The 911 caller, Baca, said that her daughter's boyfriend had "kidnapped her [daughter] the other day and he brought her back today." The boyfriend was violent and had abused Baca's daughter. The boyfriend was in his car, a baby blue Acura, and he had a gun underneath the car's hood. Based on that call, Lampkin "generated [a call] for service," namely, she dispatched the information verbally and in writing to police officers.[9] The information relayed included that the gun was loaded. All officers on patrol received the information verbally and in writing on their MDTs. Officers were also notified that the call was a high priority and immediate response was needed.

---

[6]     The reporter's transcript incorrectly states that defendant was sentenced to 15 months on count 6.

[7]     The parties stipulated that the search was warrantless.

[8]     The call was played for the jury.

[9]     Officers read dispatches on their Mobile Data Terminals (MDTs).

4

Officer Ragazzo testified that he and his partner, Officer Sanza, responded to the call of a "male with a gun." The call history said the male Hispanic, identified as defendant, was the resident's boyfriend and he'd kidnapped her a few days before. Defendant was in an Acura, and he had a loaded gun under the hood.

When Ragazzo arrived at the scene, he saw defendant in an Acura, which was parked in front of the residence.[10] The officers detained him. While Ragazzo stayed with defendant, Sanza went inside the house to talk to the reporting party. After the scene was secure, Ragazzo also went inside the house. He was told there was a gun under the hood of the car and defendant used the gun in narcotic transactions. Having decided to arrest defendant, Ragazzo went back outside. The hood of the car was open, although Ragazzo did not know who opened it. Raggazo looked into the engine compartment and saw a gun in plain view. Removing the gun, Ragazzo checked it to determine if it was loaded: it was, with 13 rounds. He removed the rounds so that the gun wouldn't discharge, and put it in his patrol vehicle.

After hearing this evidence, the trial court denied the suppression motion on the ground that the automobile exception to the general warrant requirement applied. The court said: "[W]e have a citizen informant, not somebody that calls the police and refuses to give their identity or name, some very specific details upon which to base the detention of a vehicle and the person in it, the name of the person . . . [,] the description of the vehicle, the Acura, the color of the car, the fact that he is sitting inside the vehicle at a particular location, and the fact that there is a specific gun and it is loaded and it is in the engine compartment—or under the hood anyway is what was said. So those are very, very specific facts. [¶] So when the officers, I believe, see all of that . . . corroborated— well, all the facts that they see seem to be in line with all the information that they had from the dispatch. [¶] . . . [¶] . . . And we have to assume that they all got the call and it went out both verbally and on the MDT. [¶] . . . [¶] And I believe based on [the *People v.*] *Green* [(1971) 15 Cal.App.3d 766] case, based on the automobile exception, I

---

**10**     There were approximately six officers at the scene.

5

believe there was probable cause and that the search was reasonable under these circumstances to put any officer to open the hood of that car."

B. *Probable cause supported the warrantless search of defendant's car.*

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures by law enforcement and other government officials. (U.S. Const., 4th Amend.) Subject to " 'well-delineated exceptions,' " warrantless searches are presumed to be unreasonable. (*People v. Diaz* (2011) 51 Cal.4th 84, 90; see also *People v. Rogers* (2009) 46 Cal.4th 1136, 1156.) The government bears the burden of demonstrating a legal justification for a warrantless search. (*People v. Evans* (2011) 200 Cal.App.4th 735, 742; *Rogers*, at p. 1156.) "When reviewing the denial of a suppression motion, we defer to the trial court's express or implied factual findings if supported by substantial evidence, but exercise our independent judgment to determine whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment. [Citations.] We will affirm the trial court's ruling if it is correct on any theory of law applicable to the case, even if for reasons different than those given by the trial court." (*Evans*, at p. 742; see also *People v. Glaser* (1995) 11 Cal.4th 354, 362.)[11]

Although the parties here focus on whether exigent circumstances justified the warrantless search of defendant's car,[12] we find that the search clearly falls under the automobile exception to the warrant requirement. (See generally, *Carroll v. United States* (1925) 267 U.S. 132.) Under that exception, "police who have probable cause to

---

[11] We review issues relating to the suppression of evidence under the Fourth Amendment. (*People v. Carter* (2005) 36 Cal.4th 1114, 1141.)

[12] "[T]he exigent circumstances doctrine constitutes an exception to the warrant requirement when an emergency situation requires swift action to prevent imminent danger to life." (*People v. Rogers*, *supra,* 46 Cal.4th at p. 1156.) " ' " '[T]here is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers.' " ' [Citation.]" (*Id.* at p. 1157; see also *People v. Green* (1971) 15 Cal.App.3d 766 [exigent circumstances justified warrantless search of defendant's car, based on reports that defendant had placed a bag containing a gun under the hood of his car].)

believe a lawfully stopped vehicle contains evidence of criminal activity or contraband may conduct a warrantless search of any area of the vehicle in which the evidence might be found. [Citations.] Such a search 'is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.' [Citation.] . . . 'If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.' [Citations.]" (*People v. Evans, supra,* 200 Cal.App.4th at p. 753; see also *United States v. Ross* (1982) 456 U.S. 798, 825.) The scope of the search is defined by the object of the search and the places in which there is probable cause to believe contraband may be found. (*Ross*, at p. 824.)

"Probable cause is defined as ' " 'a fair probability that contraband or evidence of a crime will be found.' " ' [Citations.] Probable cause to search thus exists when the 'known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found . . . .' [Citations.] The standard is a ' " 'fluid concept—turning on the assessment of probabilities in particular factual contexts,' " ' and is incapable of precise definition. [Citations.] A probable cause determination must be based on objective facts." (*People v. Evans, supra,* 200 Cal.App.4th at p. 753.)

There was probable cause to search defendant's parked car without a warrant.[13] Specific facts showing that the car contained evidence of criminal activity were known to the officers before they opened the hood of defendant's car. Those facts and circumstances, relayed by the 911 caller, included: defendant had kidnapped Nunez and just brought her back home; defendant was violent and abusive; and defendant had a gun

---

[13] When the police arrived, defendant was in his car, which was parked outside of Baca's house. Although defendant does not argue that the automobile exception is inapplicable to parked cars, as opposed to cars that have been lawfully stopped, parked vehicles may also be searched without a warrant if there is probable cause to justify the search. (See *California v. Carney* (1985) 471 U.S. 386, 394 [the automobile exception has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation].)

under the car's hood. The 911 caller's report was corroborated. When officers arrived, they saw a Hispanic man (defendant) sitting in a blue Acura, just as the caller described. Given that the 911 caller accurately described the suspect and his car, it was reasonable for officers to believe that the caller was similarly accurate about there being a gun under the car's hood. Thus, the facts and circumstances known to the officers when they arrived at the scene, which were corroborated by the scene itself, were sufficient to justify searching defendant's car without a warrant.

Defendant fails to squarely address the automobile exception and instead cites *Arizona v. Gant* (2009) 556 U.S. 332, to support his argument that the search here violated the Fourth Amendment. *Gant* held that police may search a vehicle incident to an occupant's arrest if the arrestee could access the car or if evidence of the offense for which he or she was arrested might be found in the car. (*Id.* at pp. 344, 351.) *Gant*, however, applies to searches *incident to arrest*. The search here was conducted *before* defendant was arrested, a point no party disputes, and therefore it was not a search incident to arrest. *Gant* is not on point.

## II. The trial court did not abuse its discretion by denying defendant's *Romero* motion.

Defendant contends that the trial court considered impermissible factors in denying his *Romero* motion to strike his prior, a 14-year old robbery committed in New York.[14] We reject this contention.

In the furtherance of justice, a trial court may strike or dismiss a prior conviction allegation. (§ 1385; *Romero, supra*, 13 Cal.4th at p. 504.) A trial court's refusal to strike a prior conviction allegation is reviewed under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) The party seeking reversal must therefore " 'clearly show that the sentencing decision was irrational or arbitrary. [Citation.]' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) It is not enough to show that reasonable people might disagree about whether to strike a prior

---

[14] Defendant waived a jury trial on his prior and admitted it.

8

conviction. (*Carmony*, at p. 378.) Rather, only extraordinary circumstances justify a finding that a career criminal is outside the Three Strikes law. (*Ibid.*) Therefore, "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*)

When considering whether to strike prior convictions, the relevant factors a court must consider are "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The Three Strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm. . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony, supra*, 33 Cal.4th at p. 378.)

Defendant argues that the trial court here first abused its discretion by "exaggerat[ing]" the " 'nature and circumstances' " of his violation of section 273.5, corporal injury to his cohabitant, Nunez, by referring to it as a " 'violent felony.' " The court said:

- "[J]ust a bare three years, seven months later [after committing the robbery in New York], he—there he is with a firearm again committing a violent felony."

- "So this court is very concerned with a defendant who has two prior violent crimes, violent robberies, with use and then a new violent crime within four years of getting out of prison where, you know, he already—it shows to me that he hasn't learned his lesson and that he is a danger to society."

- "This case certainly involves a violent felony. I regard domestic violence as a violent felony. It's not listed in the class of so-called violent felonies in the Penal Code of serious felonies. If they had found the use, it certainly

9

would have been.  [¶]  But it is a case of violence.  And in this case, he did cause injuries that lasted some days or a week later when the mother saw [her] injuries."

Section 667.5 lists "violent felonies," including, for example, murder, mayhem, and rape. A violation of section 273.5 is not a "violent felony" as defined by that section.  The trial court here, however, was not referring to section 667.5 when it repeatedly described defendant's crime as a "violent" one.  In fact, the trial court acknowledged it was not a violent crime under section 667.5.  Rather, the court considered it a "case of violence" because defendant injured Nunez, not because of a mistaken belief defendant's crime fell under section 667.5.  The trial court was clearly considering the nature and circumstances of defendant's present felony (*People v. Williams, supra,* 17 Cal.4th at p. 161), and finding that its violent nature militated against striking the prior.  The court therefore did not willfully ignore the Legislature's determination that corporal injury to a cohabitant is not a violent felony under section 667.5 and substitute its own judgment that the offense should be so classified.

Second, defendant contends that the trial court substituted its factual conclusions for the jury's.  Defendant bases his contention on these comments:  "*And I do want to make a statement about something that you put in your motion about that the jury had to believe that she was lying, that the mother was lying.  I'm not so sure about that.*  [¶]  *I just believe* that in a give and take in the deliberations, they just believed that they could not live with themselves.  It is not proof beyond a reasonable doubt.  [¶]  *I heard this testimony.  I saw the victim.  It was very tough to say what she was lying about or what she . . . wasn't lying about* because of the recantation and the fact that she still loves the defendant . . . .  [¶]  *I do believe based on what I heard on the testimony*, even though the jury didn't come back with a use or a kidnapping, she never denied that there was a gun in the car in the pocket part of the driver's door, which gun had been shown to her.  [¶] All she kept saying was that[] he never pointed it at me.  They could have easily come back with a use on that because of the way the weapon was displayed.  They just chose not to.  So I do believe that there was something to that charge.  And I don't believe

10

that—I do think it was a proof beyond a reasonable doubt situation and a give and take in deliberations. [¶] *But she never recanted about the fact that the gun was present at the time the alleged kidnapping occurred.*" (Italics added.) Then, after defense counsel objected to "the considerations of any of the unproven priors" and to any consideration that defendant was found to be in possession of a firearm as basis for denying the *Romero* motion, the trial court said it could look at defendant's entire rap sheet, "*[a]nd I do believe that I can look at the facts of this case certainly as I heard them.* And he was convicted of possession of a weapon. There was a weapon involved, obviously." (Italics added.)

Focusing on the emphasized comments out of context, defendant argues that the trial court relied "on its own beliefs about the weight of the evidence," ignoring the jury's acquittal of defendant of the kidnapping, assault with a deadly weapon, and criminal threats charges. The comments, however, do not support defendant's argument when placed in context. Rather, defendant asserted that the acquittals showed that the jury believed that Nunez was lying. The trial court responded by pointing out, correctly, that the acquittals merely established that the People had not met its burden of proving those offenses beyond a reasonable doubt. (See, e.g., *In re Coley* (2012) 55 Cal.4th 524, 554 ["a jury verdict acquitting a defendant of a charged offense does *not* constitute a finding that the defendant is factually innocent of the offense or establish that any or all of the specific elements of the offense are not true"]; *People v. Towne* (2008) 44 Cal.4th 63, 85-86 [trial courts have broad discretion to consider relevant evidence during sentencing, and "[n]othing in the applicable statute or rules suggests that a trial court must ignore evidence related to the offense of which the defendant was convicted, merely because that evidence did not convince a jury that the defendant was guilty beyond a reasonable doubt of related offenses"].) The acquittals thus were not the equivalent of a finding that Nunez lied, and the trial court was entitled to consider any relevant evidence in its sentencing determination.

11

The final reason defendant asserts for reversing the trial court's ruling on the *Romero* motion is based on a misstatement the court made about the charges against him. The court said that had the jury, as to count 1 for a violation of section 273.5, found "the use" true, defendant's conviction of corporal injury to a cohabitant would have been a violent felony under section 667.5. Defendant was not, however, charged with use of a firearm in connection with that count, and therefore in no event could the section 273.5 offense in count 1 have been a violent felony.

The trial court also said that the jury easily could have found the weapons-use allegation true in connection with count 2 for kidnapping. Defendant takes issue with this comment because Nunez, at trial, recanted prior statements she made about defendant kidnapping her. The trial court thus "illogically" and "impermissibly" assumed that defendant used a gun to kidnap Nunez although the jury acquitted defendant of kidnapping. The illogic in the trial court's statement, according to defendant, is the assumption that defendant could have found the gun-use enhancement true but acquitted him of kidnapping.

Defendant reads too much into these comments. By commenting that there was evidence to support gun-use allegations, the trial court was simply underscoring its basic point that defendant's behavior was violent. True, he was not found guilty of any gun-use enhancement. But there was evidence he displayed a gun during the underlying events, and the jury found him guilty of being a felon in possession of a gun. This could, in the trial court's discretion, speak to defendant's possible penchant for violence. And even if the trial court mistakenly believed a gun-use enhancement was alleged in connection with count 1, that mistaken belief would be insufficient to render the court's ruling on the *Romero* motion an abuse of discretion.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ALDRICH, J.


We concur:


CROSKEY, Acting P. J.


KITCHING, J.